# United States District Court, Northern District of Illinois

| Name of Assigned Judge or Magistrate Judge | James H. Alesia | Sitting Judge if Other than Assigned Judge | |
|---|---|---|---|
| **CASE NUMBER** | 01 C 9502 | **DATE** | June 26, 2003 |
| **CASE TITLE** | *Traci Radmanovich, on behalf of herself and others similarly situated vs. Combined Insurance Company of America* | | |

**MOTION:**

[In the following box (a) indicate the party filing the motion, e.g., plaintiff, defendant, 3rd party plaintiff, and (b) state briefly the nature of the motion being presented.]

**DOCKET ENTRY:**

(1) ☐ Filed motion of [ use listing in "Motion" box above.]

(2) ☐ Brief in support of motion due _____.

(3) ☐ Answer brief to motion due_____. Reply to answer brief due_____.

(4) ☐ Ruling/Hearing on _____ set for _____ at _____.

(5) ☐ Status hearing[held/continued to] [set for/re-set for] on _____ set for _____ at _____.

(6) ☐ Pretrial conference[held/continued to] [set for/re-set for] on _____ set for _____ at _____.

(7) ☐ Trial[set for/re-set for] on _____ at _____.

(8) ☐ [Bench/Jury trial] [Hearing] held/continued to _____ at _____.

(9) ☐ This case is dismissed [with/without] prejudice and without costs[by/agreement/pursuant to]
☐ FRCP4(m) ☐ Local Rule 41.1 ☐ FRCP41(a)(1) ☐ FRCP41(a)(2).

(10) ■ [Other docket entry] Enter Memorandum Opinion and Order. The court denies plaintiff's motion for class certification [59-1].

(11) ■ [For further detail see order attached to the original minute order.]

| | | | | |
|---|---|---|---|---|
| | No notices required, advised in open court. | | number of notices | **Document Number** |
| | No notices required. | | JUN 27 2003 | |
| | Notices mailed by judge's staff. | | date docketed | |
| ✓ | Notified counsel by telephone. | | | 78 |
| | Docketing to mail notices. | | docketing deputy initials | |
| | Mail AO 450 form. | | | |
| | Copy to judge/magistrate judge. | | date mailed notice | |
| CW | courtroom deputy's initials | | mailing deputy initials | |

U.S. DISTRICT COURT
CLERK
03 JUN 26 PM 4:52
FILED-ED 10

Date/time received in central Clerk's Office

# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ILLINOIS
### EASTERN DIVISION



JUN 2 7 2003

| | |
|---|---|
| TRACI RADMANOVICH, on behalf of herself and others similarly situated,<br><br>Plaintiffs,<br><br>v.<br><br>COMBINED INSURANCE COMPANY OF AMERICA,<br><br>Defendant. | )<br>)<br>)<br>)<br>) Case No: 01 C 9502<br>)<br>) Judge James H. Alesia<br>)<br>)<br>)<br>)<br>) |

## MEMORANDUM OPINION AND ORDER

Currently before the court is plaintiff Traci Radmanovich's motion for class certification, pursuant to Federal Rule of Civil Procedure 23 ("Rule 23"). For the following reasons, the court denies plaintiff's motion.

## I. BACKGROUND

Plaintiff Traci Radmanovich ("Radmanovich") brings this suit on behalf of herself and a putative class, claiming that defendant Combined Insurance Company of America ("Combined") discriminated against her and the potential class members, in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e *et seq*. ("Title VII"). Particularly, Radmanovich alleges that Combined discriminated against its female employees with regard to hiring, promotions, and commission opportunities. Additionally, Radmanovich alleges that Combined created, fostered, and tolerated a work environment that was hostile towards women.

78

Combined is an insurance company that sells its products in the United States and Canada. Combined's sales agents sell the company's insurance products door-to-door and work exclusively on commission. The company has a national office, but does not maintain local offices. Combined's Seventh Essential Sales Force – which is the subject of this litigation – is divided into six divisions throughout the United States, each of which is managed by a division manager. (Def.'s Ex. 7, at 2.) Those divisions are divided into forty-five geographic regions, each of which is managed by a regional manager. (*Id.*) The regions are divided into forty-three sub-regions, and those sub-regions are divided into over four hundred districts, each of which is managed by a district manager or a territory manager. (*Id.*)

Because Combined does not maintain local offices, company meetings are held in places such as local coffee shops. Each week, agents receive work assignments from their local managers, which include cards that identify insurance policies that are up for renewal. Usually, sales and other customer meetings take place in the customer's home or workplace.

Combined requires agents to complete a highly structured training program. This training consists of both classroom and field training. All new sales agents begin their employment by attending a three-week training session. Additionally, agents attend periodic training seminars as well as other meetings and conferences.

Radmanovich was hired at Combined as a sales agent. Later, she was promoted to District Director and, in August 1997, was assigned to a historically under-producing district. According to Radmanovich, during her first six months as a director in that district, the territory improved and she became eligible for a bonus. Radmanovich claims that, although her District

Manager initially refused to give her the bonus, she ultimately received it, after fighting for it. In 1998, according to Radmanovich, she ranked highly, nationally, in insurance increases. Despite her successful year, she was twice passed over for promotions to Sub-regional Manager, in favor of male employees whose insurance increase ranks were not as high. Ultimately, Radmanovich was demoted to sales agent.

Additionally, Radmanovich alleges that she was sexually harassed while working at Combined. She claims that she continually received comments from her superiors about her body or sex life. Also, according to Radmanovich other managers allegedly made lewd remarks towards her and propositioned her at conferences and meetings. Finally, she claims that pornography was played at company meetings.

Radmanovich alleges that the other members of the class experience the same type of discrimination at Combined. She contends that Combined assigns female employees to less lucrative geographic areas and gives them fewer insurance prospects per week than the company gave male employees. Radmanovich argues further that such diminished opportunities, as well as other discriminatory actions, prevent female employees from receiving promotions, bonuses, and sales awards at the same rate as male employees. Also, she claims that female employees do not receive the same quality of training as male employees. Furthermore, Radmanovich claims that female employees experience demeaning and harassing actions and comments in the Combined workplace, including during weekly meetings with managers, training sessions, and at periodic sales and training meetings. Finally, she contends that Combined's response to these alleged occurrences and practices demonstrates that a pattern or practice of discrimination exists

at Combined that the company both knows about and consciously promotes. She contends that the company's structure facilitated this discrimination. Radmanovich claims that she can provide both statistical evidence of discrimination against women, as well as anecdotal evidence that supports her statistics and substantiates the class claims regarding a pattern or practice of discrimination.

Radmanovich alleges that Combined's structure and culture discriminates against women in a number of ways. First, she claims that Combined provides female employees with inferior training. Second, Radmanovich alleges that Combined's managers give female agents inferior sales opportunities and diminished prospects for success. Third, she contends that Combined grants fewer promotions to men than to women. Fourth, Radmanovich claims that Combined's female employees are continually sexually harassed. Finally, she complains that Combined's management knows about the discriminatory and harassing actions that occur within the company and that the company does not take effective steps to stop such behavior.

On December 31, 2001, Radmanovich and nine other individual plaintiffs filed this lawsuit as a class action, claiming that Combined discriminated against them and the other members of the class on the basis of their sex, in violation of Title VII. On February 12, 2002, the court granted plaintiffs' motion to dismiss without prejudice the other nine individual plaintiffs. On February 26, 2002, Radmanovich filed a two-count first amended complaint with the court. Count I alleges a class claim for sexual discrimination, and Count II asserts an individual claim for retaliation, in violation of 42 U.S.C. § 2000e-3(a). The court has subject matter jurisdiction over this case pursuant to 28 U.S.C. § 1331 because the case arises under a

4

federal statute. Radmanovich has filed a motion for class certification. Particularly, seeks to certify the following class: "All women who, at any time on or after April 30, 1999, worked in Combined Insurance Company of America's Seventh Essential Enhanced Sales Force and were sales agents or managers at some point during their employment with Combined."[1] (Pl.'s Mem. in Supp. of Class Cert., at 1.)

## II. DISCUSSION

### A. Standard for Deciding a Motion for Class Certification

In deciding a motion for class certification, the court may not consider the merits of the underlying claims. *Rodriguez v. Ford Motor Credit Co.*, No. 01 C 8526, 2002 WL 655679, at *1 (N.D. Ill. Apr. 19, 2002) (citing *Eisen v. Carlisle & Jacquelin*, 417 U.S. 156, 177-78 (1974)). However, in determining whether the requirements of Rule 23 are met, the court may look beyond the pleadings. *Id.* (citing *Szabo v. Bridgeport Mach., Inc.*, 249 F.3d 672, 677 (7th Cir. 2001)). *See also Gen. Tel. Co. of the S.W. v. Falcon*, 457 U.S. 147 (1982) ("[S]ometimes it may be necessary for the court to probe behind the pleadings before coming to rest on the certification question."). Additionally, in order to make a meaningful determination of the certification issues under Rule 23, the court must "understand the claims, defenses, relevant facts and applicable substantive law." *Dahmer v. Bristol-Myers Squibb Co.*, 183 F.R.D. 520, 530 (N.D. Ill. 1998) (citation omitted).

---

[1] On June 26, 2003, the court granted Radmanovich's motion to correct recent filings, which addressed the issue of whether certain individuals who provided declarations in support of the motion for class certification were potential class members. However, regardless of whether the class included Combined's entire workforce or simply the Seventh Essential Enhanced Sales Force, the court's decision would be the same.

The plaintiff has the burden of demonstrating that all the requirements for class certification are met. *Anderson v. Cornejo*, 199 F.R.D. 228, 238 (N.D. Ill. 2000) (citing *Retired Chicago Police Ass'n v. City of Chicago*, 7 F.3d 584, 596 (7th Cir. 1993)). First, the plaintiff must establish that the class meets the requirements of Rule 23(a). *Rodriguez*, 2002 WL 655679, at *1. If the plaintiff satisfies all four Rule 23(a) elements, she must then meet the requirements of one of the subsections of Rule 23(b). *Id.* First, the court will review Radmanovich's compliance with the Rule 23(a) requirements. Second, the court will determine whether she satisfies any of the subsections of Rule 23(b).

**B.**     **Radmanovich's Motion for Class Certification**

     **1.**     **Rule 23(a)**

Under Rule 23(a), a court may certify a class only if the requirements of numerosity, commonality, typicality, and adequacy of representation are met. *Rodriguez*, 2002 WL 655679, at *2 (citing FED. R. CIV. P. 23(a)). The court will review whether Radmanovich has met her burden with regard to each of the Rule 23(a) requirements in turn.

       **a.**     **Numerosity**

Radmanovich claims that this class consists of over 6,500 women. Combined does not oppose Radmanovich's assertions that she satisfies the numerosity requirement.

When moving for class certification, a plaintiff must establish that "the class is so numerous that joinder of all members is impracticable." FED. R. CIV. P. 23(a)(1). The plaintiff need not provide an exact number of class members. *Rodriguez*, 2002 WL 655679, at *2 (citing *Marcial v. Coronet Ins. Co.*, 880 F.2d 954, 957 (7th Cir. 1989)). A plaintiff is, however,

required to provide a good faith estimate of the size of the class. *Id.* (citing *Allen v. City of Chicago*, 828 F. Supp. 543, 550 (N.D. Ill. 1993)). In determining whether joinder is impracticable, the court should consider: (1) the class size; (2) the geographic dispersion of the class members; (3) the type of relief sought by the class; and (4) the practicability of relitigating a common core issue. *Betts v. Sundstrand Corp.*, No. 97 C 50188, 1999 WL 436579, at *5 (N.D. Ill. June 21, 1999).

In this case, the large size of the potential class as well as the national dispersion of the class members strongly suggest that joinder is impracticable in this case. Additionally, it would be impracticable to relitigate the "pattern or practice" issue – which is central to this case – hundreds of times. Therefore, the court concludes that Radmanovich has met the numerosity requirement of Rule 23(a)(1).

### b. **Commonality**

Radmanovich argues that the common issues in this case include: (1) whether a pattern or practice of discrimination existed at Combined; (2) whether her statistical evidence establishes discrimination; and (3) Combined's response to complaints and reports of discrimination and harassment. Combined responds by arguing that commonality is not met in this case because: (1) the class would consist of thousands of individuals who worked at different locations, for different supervisors, and who had different work experiences; (2) each class member's qualifications for a particular promotion or other employment benefit must be examined; (3)

Combined's structure resulted in decentralized decision-making; and (4) claims of harassment depend upon individualized factors.[2]

In order to establish commonality, a plaintiff must show "there are questions of law or fact common to the class." FED. R. CIV. P. 23(a)(2). Generally speaking, a common nucleus of operative fact is sufficient to satisfy the commonality requirement of Rule 23(a)(2). *Keele v. Wexler*, 149 F.3d 589, 594 (7th Cir. 1998) (citing *Rosario v. Livaditis*, 963 F.2d 1013, 1018 (7th Cir. 1992)). The Seventh Circuit has found that a common nucleus of operative fact exists when "defendants have engaged in standardized conduct towards members of the proposed class." *Id.* Additionally, "[c]ommonality may be found where the defendant operates under a general policy of discrimination manifested through entirely subjective decision making practices." *Rodriguez*, 2002 WL655679, at *3 (citing *Falcon*, 457 U.S. at 159 n.15). Factual variations among the plaintiffs' claims do not destroy commonality. *Toney v. Rosewood Care Ctr., Inc.*, No. 98 C 693, 1999 WL 199249, at *6 (N.D. Ill. Mar. 31, 1999) (citing *Rosario*, 963 F.2d at 1013).

---

[2]Both parties discuss Radmanovich's "pattern or practice" evidence, particularly her statistical evidence, at length in their briefs. However, those arguments are relevant to the merits of the class claims and are not relevant to class certification. *See Rodriguez*, 2002 WL 655679, at *1 (stating that a court determining whether class certification is appropriate may not consider the merits of the underlying claims); *Adams v. R.R. Donnelley & Sons*, Nos. 98 C 4025, 96 C 7717, 2001 WL 336830, at *7 (N.D. Ill. Apr. 6, 2001) ("This is precisely the type of 'statistical dueling' that is not relevant to the class certification analysis.") (citation omitted). Additionally, Combined argues that commonality is not met because of the court's February 5, 2002 decision not to permit joinder in this case. The court notes, however, that the considerations behind that decision are probative of the court's finding that predominance and superiority are not met in this case, *infra* Sect. II.B.2. *See Alvarez v. Armour Pharm.*, No. 94 C 3587, 1997 WL 566373, at *2 (N.D. Ill. Sept. 8, 1997) (stating that where joinder is not proper under Rule 20, certification under Rule 23(b)(3) is probably not possible).

Radmanovich brings this case as a "pattern or practice" class action. Therefore, she – on behalf of the putative class – would have the initial burden of showing that unlawful discrimination based upon sex was the employer's regular policy. *King v. Gen. Elec. Co.*, 960 F.2d 617, 623 (7th Cir. 1992) (citing *Int'l Bhd. of Teamsters v. United States*, 431 U.S. 324, 360 (1977)). In order to do so, Radmanovich purports to offer both statistical evidence that establishes discrimination, as well as declarations of potential class members that describe a series of discriminatory acts by Combined. She claims that Combined had a pattern or practice of discriminating against female employees and seeks certification of a class of women who suffered some injury as a result of that policy.

The court finds that common issues of law and fact exist in this case, including, but not limited to: (1) whether a pattern or practice of sexual discrimination exists at Combined; (2) whether Radmanovich's statistical evidence establishes such a pattern or practice; (3) Combined's knowledge of such a pattern or practice of discrimination; and (4) Combined's preventative or remedial actions with regard to such discrimination. Consequently, the court concludes that the commonality requirement is satisfied in this case. *See Hill v. Amoco Oil Co.*, No. 97 C 7501, 2001 WL 293623, at *5 (N.D. Ill. Mar. 19, 2001) (holding that whether pattern or practice of discrimination existed constituted a common issue that satisfied the requirement of Rule 23(a)(2)). Although defendant correctly points out that there are many individual issues in this case that must be resolved, the quantity of such issues is more determinative of predominance than commonality. *See id.* (holding that large number of individual questions respecting liability were relevant only to predominance and not commonality). *See also Daniels*

*v. Fed. Reserve Bank of Chicago*, 194 F.R.D. 609, 614 (N.D. Ill. 2000) (holding that commonality met where plaintiffs alleged that defendant engaged in pattern or practice of discrimination); *Jefferson v. Windy City Maint.*, No. 96 C 7686, 1998 WL 474115, at *6 (N.D. Ill. Aug. 4, 1998) (holding that commonality was met – despite factual variations between plaintiffs' claims – where policy and practice of discrimination was alleged).

Therefore, the court concludes that Radmanovich has satisfied the commonality requirement of Rule 23(a)(2).

### c.   **Typicality**

The third requirement for class certification is that the court must first find that "the claims and defenses of the representative parties are typical of the claims or defenses of the class." FED. R. CIV. P. 23(a)(3). Radmanovich argues that her claims are typical of those of the rest of the class. Particularly, she emphasizes that she was initially hired by Combined as an agent and was discriminated against throughout her career when she was: (1) exposed to a hostile work environment; (2) given fewer economic opportunities than male employees; (3) denied bonuses; and (4) demoted. Combined argues in response that Radmanovich's claims are not typical of those of the rest of the class members.

The typicality inquiry is closely related to the commonality inquiry. *Keele*, 149 F.3d at 595 (citing *Rosario*, 963 F.2d at 1018). "A 'plaintiff's claim is typical if it arises from the same event or practice or course of conduct that gives rise to the claims of other class members and his or her claims are based on the same legal theory.'" *Id.* (quoting *De La Fuente v. Stokely-Van Camp, Inc.*, 713 F.2d 225, 232 (7th Cir. 1983)). Typicality requires only that the claims of the

class representative and the class members share the same essential characteristics, and the mere existence of factual differences will not preclude class certification. *Moreno v. DFG Foods, LLC*, No. 02 C 4019, 2003 WL 21183903, at *8 (N.D. Ill. May 22, 2003) (citing *Ret. Chicago Police Ass'n*, 7 F.3d at 596-97 (additional citation omitted)). In determining typicality, "[s]imilarity of legal theory is more important than factual similarity, so the presence of factual differences between the claims of the members of the proposed class is not fatal to a finding of typicality." *Harris v. City of Chicago*, Nos. 96 CV 2406, 96 CV 7526, 1998 WL 59873, at *5 (N.D. Ill. Feb. 9, 1998) (citing *De La Fuente*, 713 F.2d at 232).

Despite the factual distinctions between Radmanovich's claims and the claims of the potential class, the court finds that her claims arise from the same practice or course of conduct as the claims of the other potential class members. Radmanovich and the class claim that Combined's practice and policy of discrimination caused their injuries. Therefore, the court concludes that Radmanovich has satisfied the typicality requirement in this case. *See Windy City Maint.*, 1998 WL 474115, at *8 (holding that typicality existed where claims of named plaintiffs, as well as those of class members, arose from the same allegedly discriminatory practices or courses of conduct).

Combined argues that Radmanovich cannot satisfy the typicality requirement because resolution of her claims will not prove the claims of the rest of the potential class members. However, it is not a requirement for class certification that the class issues will dispose of all the individual claims of the class members. Regardless of whether a pattern or practice of discrimination can be established or whether the class representative succeeds on her claims,

class certification can be appropriate when a limited number of individual determinations are required. *See Daniels*, 194 F.R.D. at 614-15 (focusing upon defendant's discriminatory conduct and not individual factual determinations regarding class members' individual claims in determining that typicality was satisfied). As already noted, the critical inquiry in determining whether typicality exists is whether the class claims share the same essential legal determinations with the class representative. *Keele*, 149 F.3d at 595 (quoting *De La Fuente*, 713 F.2d at 232). In this case, Radmanovich's core legal allegations are typical of those of the other class members and, thus, resolution of those issues will aid in the resolution of the class members' claims. Therefore, the court is unpersuaded by Combined's argument.

Combined argues also that typicality is not satisfied in this case because it can assert unique defenses to the claims of class members and the resolution of those issues is likely to consume significant trial time. In support of its argument, Combined cites to *Patterson v. Gen. Motors Corp.*, 631 F.2d 476, 481 (7th Cir. 1980), for the proposition that "Typicality is lacking if unique defenses to the claims of class members consume significant trial time." (Def.'s Mem. in Opp. to Pl.'s Mot. for Class Cert'n., at 8.) However, Combined's reliance upon *Patterson* is misplaced because, in *Patterson*, the Seventh Circuit's determination that typicality was not satisfied rested upon the fact that defendant could assert a defense against the named plaintiff that was not available against the class members. *Patterson*, 631 F.2d at 481. *Patterson* did not deal with the issue of whether various defenses available against class members will take up significant trial time, and the court finds that Combined's argument is more suited to its discussion of the predominance requirement of Rule 23(b)(3), *infra* Sect. II.B.2.a. Furthermore,

the Seventh Circuit has stated, "Typicality under Rule 23(a)(3) should be determined with reference to the company's actions, not with respect to particularized defenses it might have against certain class members." *Wagner v. Nutrasweet Co.*, 95 F.3d 527, 534 (7th Cir. 1996) (citing *Rosario*, 963 F.2d at 1018). Thus, the court is not convinced by Combined's argument.

Consequently, the court finds that Radmanovich has satisfied the typicality requirement of Rule 23(a)(3).

### d.    <u>Adequacy of Representation</u>

The final Rule 23(a) requirement for class certification is that "the representative parties will fairly and adequately protect the interests of the class." FED. R. CIV. P. 23(a)(4). Radmanovich argues that she is an adequate class representative because her attorneys are qualified and she has diligently pursued this case.    Combined argues in response that Radmanovich is not an adequate class representative because she had a management role for part of her career at Combined and, thus, enforced the discriminatory policies that she challenged. Also, Combined argues that Radmanovich's representation would not be adequate because her husband is also a manager at the company.

In determining whether a plaintiff's representation of a class would be adequate, the court must make two inquiries: (1) whether the named plaintiff's counsel is adequate and (2) whether the named plaintiff's representation in protecting the distinct interests of class members is adequate. *Rodriguez*, 2002 WL 655679, at *3 (citing *Ret. Chicago Police Ass'n*, 7 F.3d at 598). In order to satisfy the requirements of Rule 23(a)(4), the class representative must "'possess the same interest and suffer the same injury as the class members.'" *Uhl v. Thoroughbred Tech. &*

*Tel., Inc.*, 309 F.3d 978, 985 (7th Cir. 2002) (quoting *E. Tex. Motor Freight Sys., Inc. v. Rodriguez*, 431 U.S. 395, 403 (1977)) (additional citations omitted). Thus, the court is required to make sure that there are no inconsistencies between the interests of the named party and the class that she represents. *Id.* (citing *Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 630 (1997)). First, the court will review whether Radmanovich's counsel is adequate. Second, the court will determine whether Radmanovich's representation of the class interests is adequate.

Combined does not dispute the qualifications of Radmanovich's attorneys. Radmanovich has filed the affidavit of Shona B. Glink ("Glink"), a partner in one of the firms that represents Radmanovich in this case. Glink states that the firm has worked on several "pattern or practice" discrimination class action cases. In support of her statements in the affidavit, Glink has attached a resume for the firm, as well as a partial list of cases, which demonstrates the firm's experience in discrimination class actions. Additionally, the credentials of Patricia C. Benassi ("Benassi") – another of Radmanovich's attorneys – indicate that she has significant experience with employment discrimination cases as well as several discrimination class actions. Therefore, the court finds that Radmanovich's counsel is adequate.

Turning to whether Radmanovich's representation is adequate, the court first finds that she has suffered the same injuries as the members of the class that she seeks to represent. Radmanovich has alleged that she, along with the other members of the potential class, was denied economic opportunities, was denied promotions, and was forced to endure harassment, all due to her sex. Additionally, the court finds that Radmanovich has the same interest in a finding that Combined discriminated against its female employees as the rest of the potential

class members. *See Windy City Maint., Inc.*, 1998 WL 474115, at *8-*9 (N.D. Ill. Aug. 4, 1998) (holding that any tension between supervisory employees and nonsupervisory employees was overcome by the potential class representative supervisor's interest in eliminating alleged discrimination as to herself such that adequacy requirement was satisfied).

Combined argues that Radmanovich's representation is not adequate because she was promoted to a management position, whereas most of the class members did not receive promotions. It is true that, in some cases, courts have not allowed supervisory and nonsupervisory employees to belong to the same class. However, in other cases – which are more analogous to the instant case – courts have certified classes that included both supervisory and nonsupervisory personnel where all employees share the same interests and suffered the same injuries. *See e.g. Wilfong v. Rent-A-Center*, No. 00-CV-0680-DRH, 2001 WL 1795093, at *7 (S.D. Ill. Dec. 27, 2001) (holding that the fact that some plaintiffs may have been promoted did not render them unsuitable as class representatives because even promoted employees could have been denied greater professional progress due to their sex); *Windy City Maint.*, 1998 WL 474115, at *9 (holding that adequacy was not defeated where class representative supervised and disciplined other class members because representative had the same interest as class members in eliminating discrimination). Additionally, the mere fact that Radmanovich's husband is a manager at Combined does not diminish Radmanovich's interest in vindicating herself from the alleged discrimination that she suffered at the company, nor does it eliminate her injuries. Because the court finds that Radmanovich shares the same interests and has suffered the same injuries as the potential class, the court is unpersuaded by Combined's arguments.

In conclusion, Radmanovich has established both that her counsel is adequate and that she can adequately protect the interests of the class members. The court finds that she, like the rest of the class, allegedly was denied economic opportunities, allegedly was denied promotions, and allegedly was forced to endure harassment, all by reason of her sex. Thus, Radmanovich has the same interest in pursuing this case as the rest of the class members.

Therefore, the court concludes that Radmanovich has satisfied the adequacy requirement of Rule 23(d). Because the court finds that she has met her burden under Rule 23(a), the court must now determine whether she can meet the requirements of Rule 23(b).

## 2.     **Rule 23(b)(3)**

Radmanovich has moved for certification of her class pursuant to Rule 23(b)(3), which is appropriate because her suit seeks only damages and not injunctive relief. (Pl.'s Mem. in Supp. of Class Cert., at 14.) *See Bishop v. Gainer*, 272 F.3d 1009, 1017-18 (7th Cir. 2001) (noting that when damages are sought in a particular case, certification should be analyzed under Rule 23(b)(3)); *Jefferson v. Ingersoll Int'l, Inc.*, 195 F.3d 894, 898 (7th Cir. 1999) ("When substantial damages have been sought, the most appropriate approach is that of Rule 23(b)(3).").

In order to succeed on a motion to certify a class under Rule 23(b)(3), the plaintiff must make two showings: (1) the common issues of fact and law in the case predominate and (2) the class action is a superior means for resolving the case. *Blair v. Supportkids, Inc.*, No. 02 C 632, 2003 WL 1908031, at *4 (N.D. Ill. Apr. 18, 2003) (citing FED. R. CIV. P. 23(b)(3); *Amchem Prods.*, 521 U.S. at 614) (additional citation omitted)). In reviewing whether a plaintiff has satisfied the Rule 23(b)(3) requirements, the court must consider: (1) the substantive elements

16

of plaintiff's cause of action; (2) the proof necessary for those elements; and (3) the manageability of trial on those issues. *Rodriguez*, 2002 WL 655679, at *4 (citing *Simer v. Rios*, 661 F.2d 665, 672 (7th Cir. 1981)). The purpose of the predominance and superiority requirements is to determine whether class certification will have practical utility in the suit. *Anderson v. New Dimension Fin. Servs., L.P.*, No. 00 C 3725, 2001 WL 1155251, at *2 (N.D. Ill. Sept. 28, 2001) (citing *Doe v. Guardian Life Ins. Co. of Am.*, 145 F.R.D. 466, 474 (N.D. Ill. 1992)).

### a. **Predominance**

Radmanovich argues that class issues predominate over the individual issues in this case. Particularly, she points to the class-wide issues of the alleged pattern and practice of discrimination, with regards to compensation, resources, harassment, and Combined's response to complaints of discrimination and harassment.[3] In response, Combined argues that class issues do not predominate in this case because each class member's claims will require a determination of many individual issues that cannot be established through class treatment.

In order to satisfy the predominance requirement, a plaintiff must establish that "common issues of law and fact are central to all of their claims." *Blair*, 2003 WL 1908031, at *4 (citations

---

[3]Also, Radmanovich cites *Mejdrech v. Met-Coil Systems Corp.* for the proposition that class certification is appropriate even where individual liability determinations would still be necessary. 319 F.3d 910, 912 (7th Cir. 2003). However, *Mejdrech* was a pollution case which, by nature, featured much more standardized conduct by the defendant. *See id.*, at 910 ("We grant permission [to appeal] in order to determine the appropriateness of class action treatment in pollution cases."). Accordingly, the court was required to make significantly fewer individual liability determinations. Furthermore, the Seventh Circuit in *Mejdrech* did not refer to the predominance requirement of Rule 23(b). *See id.*, at 910-11. Therefore, the court finds *Mejdrech* uninstructive to these particular facts.

omitted). Although the common issues must predominate the case, it is not necessary that the plaintiff show them to be exclusive. *Levitan v. McCoy*, No. 00 C 5096, 2003 WL 1720047, at *6 (N.D. Ill. Mar. 31, 2003) (citation omitted). In determining whether the predominance requirement is met, a court should focus upon the issue of liability, instead of damages. *Id.* In making this determination, the court may look beyond the pleadings and determine whether the parties' claims are subject to proof by common evidence. *Blair*, 2003 WL 1908031, at *4 (citing *Falcon*, 457 U.S. at 160). If liability questions are not subject to class-wide proof and would instead require "'individual and fact intensive'" determinations, it cannot be said that common issues predominate. *Id.* (quoting *Roman v. First Franklin Fin. Corp.*, No. 00 C 7228, 2001 WL 322563, at *2 (N.D. Ill. Mar. 3, 2001)). With this standard in mind, the court now turns to the class claims at issue in this case. Radmanovich's class claim for discrimination encompasses three types of claims: (1) economic discrimination; (2) discrimination in promotion; and (3) hostile work environment. (Pl.'s Reply Mem., at 6.) The court will address each of these in turn.

### i. Class economic discrimination claims

First, the court finds that common issues do not predominate with regard to the class economic discrimination claim. In order to establish a *prima facie* case for sexual discrimination under Title VII, a plaintiff must establish: (1) she is a member of a protected class; (2) she was performing her job satisfactorily; (3) she suffered an adverse employment action; and (4) similarly situated individuals who were not members of the protected class were treated more

favorably. *Traylor v. Brown*, 295 F.3d 783, 788 (7th Cir. 2002).[4] In this case, only the first and fourth elements of this four-part test are susceptible to class proof by the establishment of a pattern or practice of discrimination. Most importantly, a review of the statements filed by the potential class members reveals that all plaintiffs did not suffer the same employment actions. (*See* Pl.'s Ex. 2.) Therefore, even if plaintiffs could establish a pattern or practice of discrimination by Combined, the court could not determine liability with regard to each class member without an individual determination of the adverse employment action suffered by each individual class member. Furthermore, the court would need to make an additional legal determination as to whether each injury constituted an adverse employment action, as defined by Seventh Circuit precedent. *See Stutler v. Ill. Dep't. of Corr.*, 263 F.3d 698, 703 (7th Cir. 2001) (discussing legal standards for determining whether an adverse employment action occurred). The key issue is that each plaintiff would need to come forth with proof of how the pattern or practice of discrimination impacted her. *See Teamsters*, 431 U.S. at 363 (stating that proof of a discriminatory pattern or practice supports an inference that any employment decision during the relevant period was motivated by that policy, but noting that, for individual relief, a showing is still required of a particular employment decision that impacted the individual). Such

---

[4]The court acknowledges that the *McDonnell Douglas* burden-shifting approach does not apply to this case, which seeks to apply the "pattern or practice" model set forth by the Supreme Court in *Int'l Brotherhood of Teamsters v. United States*, 431 U.S. 324 (1977). However, a court reviewing a motion for class certification under Rule 23(b)(3) must be aware of the elements of the class list with the necessary proof. *Rodriguez*, 2002 WL 655679, at *4. To this extent, the court finds that the *prima facie* tests for the plaintiff's burden under *McDonnell Douglas* are instructive and will refer to them as such in determining which issues are individual and which issues are common in this case.

determinations would require the consideration of individualized evidence and the resolution of individual issues.

Therefore, the court cannot conclude that common issues predominate with regard to the class economic discrimination claims. *See Hill*, 2001 WL 293628, at *7-*8 (holding that predominance requirement was not satisfied where liability determinations for each class member depended upon individual factors).

### ii. Class discrimination in promotion claims

In order to establish a *prima facie* case for sexual discrimination in a "failure to promote" context, the plaintiff must show: (1) she is a member of a protected class; (2) she was qualified for the position sought; (3) she was rejected in her application for the position; and (4) the employee promoted was not a member of the protected class and was not more qualified than the plaintiff. *Johnson v. Nordstrom, Inc.*, 260 F.3d 727, 732 (7th Cir. 2001). Regardless of a finding of a pattern or practice of discrimination, a determination of liability regarding any decision by Combined not to promote a class member would require an individualized review as to whether elements two and four were satisfied. Each class members' qualifications for a particular job are unique, both in terms of her individual professional achievements, as well as the requirements for the position sought. Likewise, the qualifications of the male employee who received the promotion are unique to each decision. As noted with regard to the economic discrimination claims, *supra* Sect. II.B.2.a.i., regardless of whether the class can establish the pattern or practice of discrimination, each individual class member would need to establish how that discrimination impacted her promotion status at Combined.

Consequently, the court cannot conclude that common issues predominate with regard to the class failure to promote claims. *See Rodriguez*, 2002 WL 655679, at *5 ("'[W]here liability determinations are both individual and fact intensive, class certification under Rule 23(b)(3) is improper.'") (quoting *Roman*, 2001 WL 322563, at *2).

### iii. Class hostile work environment claims

In order to state a claim for hostile work environment sexual harassment, a plaintiff must show: (1) she was subjected to unwelcome sexual harassment in the form of either verbal or physical conduct of a sexual nature; (2) the harassment was based upon her sex; (3) the sexual harassment unreasonably interfered with the plaintiff's work performance by creating a hostile or offensive environment that seriously affected the plaintiff's psychological well-being; and (4) there is a basis for employer liability. *Parkins v. Civil Constructors of Ill., Inc.*, 163 F.3d 1027, 1032 (7th Cir. 1998). Additionally, the hostile environment must be both objectively and subjectively offensive. *Quantock v. Shared Mktg. Servs., Inc.*, 312 F.3d 899, 903 (7th Cir. 2002).

In this case, the first two of these elements would be satisfied by a finding that a pattern or practice of discrimination existed. Furthermore, such a finding would fulfill the requirement that the environment be objectively hostile. The pattern or practice finding would not, however, satisfy the need for each plaintiff to show that she found Combined's work environment to be subjectively hostile, which is one individual issue that would have to be resolved with regard to each class member in establishing liability. More problematic, however, would be determining whether each individual class member could satisfy the fourth element and establish a basis for employer liability.

In hostile work environment cases, employer liability depends upon whether a supervisor or a coworker created the hostile environment. *Mason v. S. Ill. Univ.*, 233 F.3d 1036, 1043 (7th Cir. 2000). Thus, the court would be required to determine whether a supervisor or a coworker created the hostile environment, as experienced by each class member. The determination of whether a particular Combined employee constituted a supervisor or a coworker in each particular case would require a detailed legal analysis. *See Parkins*, 163 F.3d at 1032-34 (outlining the legal standards delineating the distinction between supervisors and coworkers, under Title VII). If coworkers created the hostile environment, then Combined would be liable if it was negligent in either discovering or remedying harassment, both of which could be resolved on a company-wide and class-wide basis. *See Mason*, 233 F.3d at 1043 (citing *Parkins*, 163 F.3d at 1032).

However, Combined would be strictly liable for a hostile environment created by a particular class member's supervisor if the class member could establish that she suffered an adverse employment action.[5] *Mason*, 233 F.3d at 1043 (citations omitted). Thus, if the court found that a particular class member was harassed by her supervisor, the court would then have to determine whether the class member suffered an adverse employment action. Such a determination would require a factual analysis of the particular injury suffered by the class member, as well as a legal analysis of whether that injury constituted an adverse employment action, as defined by Seventh Circuit precedent. *See Savino v. C.P. Hall Co.*, 199 F.3d 925, 932

---

[5]Based upon a review of the potential class members' statements in this case, as well as Radmanovich's briefs, it appears that harassment by supervisors will be the circumstances in most class members' cases. (*See* Pl.'s Ex. 2.)

n.8 (7th Cir. 1999) ("Thus, a tangible employment action is akin to an adverse employment action, as courts have used the term.").

Finally, if the class member was harassed by her supervisor but did not suffer an adverse employment action, Combined would be entitled to assert an affirmative defense against the class member by establishing that (1) Combined exercised reasonable care to prevent and correct promptly any sexually harassing behavior and (2) the class member unreasonably failed to take advantage of the preventative or corrective opportunities provided by Combined or otherwise failed to avoid harm.[6] *Burlington Indus., Inc. v. Ellerth*, 524 U.S. 742, 765 (1998). Although the first part of this affirmative defense could be resolved on a class-wide basis, the second element would require an additional individual determination regarding the particular actions of the class member. This issue appears particularly difficult to resolve in this case because the potential class members' statements indicate a wide variety of responses on their part to the allegedly harassing conduct they experienced.

Thus, the court finds that the individual issues of: (1) whether the work environment was subjectively hostile; (2) whether a supervisor or coworker exposed the class member to the hostile environment; (3) whether each particular class member suffered an adverse employment

---

[6]Combined also argues that the fact that two additional defenses could be raised in this case against certain class members defeat certification. The first of these is that Title VII applies only to employees and not to independent contractors, as defined by the statute. *See Worth v. Tyer*, 276 F.3d 249, 262 (7th Cir. 2001) (noting that independent contractors are not protected by Title VII). The second of these defenses is that created by the Bennett Amendment to Title VII. *See* 42 U.S.C. § 2000e-2(h). However, the court finds that the employee / independent contractor issue and the applicability of the Bennett Amendment are issues that would be more efficiently resolved on a class-wide basis. Therefore, the court finds that the possible application of these defenses do not defeat predominance.

action; and (4) the particular class member's steps in taking advantage of possible preventative or corrective opportunities offered by Combined predominate over class issues with regard to the hostile work environment claims. Consequently, the court finds that the predominance requirement is not met with regard to those claims.

In sum, the court finds that Radmanovich has failed to meet her burden of showing that common issues predominate with regard to all of the class claims. Therefore, the court denies Radmanovich's motion for class certification.

**b.** **Superiority**

Radmanovich argues that a class action constitutes the superior means for resolving the claims at issue in this case. She contends that the proposed class would be manageable and claims that the class members would not be able to assert their claims outside the context of a class action. In response, Combined argues that the proposed class is not manageable, due to the many individual issues in the case, and points out that other potential class members that were originally joined as class representatives in this case have already filed their own cases.[7]

In determining whether the superiority requirement is satisfied, the court must look to: (1) the interest of class members in individually controlling the prosecution or defense of separate actions; (2) any litigation regarding the controversy already commenced by or against class members; (3) the desirability of concentrating the litigation in a particular forum; and (4)

---

[7]Combined also argues that the pattern or practice class treatment of this case would violate the Seventh Amendment. Because the court finds that the predominance, *supra* Sect. II.B.2.a, and superiority requirements, *infra* Sect. II.B.2.b, are not met in this case, it need not consider this argument.

the difficulties that will be encountered in managing a class action. *Szabo*, 249 F.3d at 676 (citing FED. R. CIV. P. 23(b)(3)). The determination of manageability includes the entire range of practical problems that could render the class action inappropriate for a particular suit. *Williams v. Chartwell Fin. Servs.*, 204 F.3d 748, 760 (7th Cir. 2000) (quoting *Eisen*, 417 U.S. at 164). First, the court will determine whether a class action would be manageable in this case. Second, the court will turn to the remaining three considerations set forth by Rule 23(b)(3).

Regardless of whether a pattern or practice of discrimination could be established, there would need to be individual determinations – potentially more than six thousand – with regard to Combined's liability to each potential class member. The volume of these individual liability determinations would render this case totally unmanageable as a class action. *See Cedeno v. Fieldstone Mortgage Co.*, No. 01 C 5110, 2002 WL 1592759, at *6 (N.D. Ill. July 15, 2002) (holding that case was not amenable to class treatment where court would have to examine liability with regard to each potential class member individually); *Rodriguez*, 2002 WL 655679, at *5 (holding that class action would not be manageable where case would require thousands of individual liability determinations) (citing *Roman*, 2001 WL 322563, at *2). In conclusion, the court finds that the predominant individual issues in this case would require extensive individual and exclusive liability determinations with regard to the claims of each class member. Accordingly, the court concludes that Radmanovich has failed to satisfy her burden of establishing that a class action would be manageable in this case. The court now turns to the other three factors set forth by Rule 23(b)(3).

First, the court finds that each potential class member has a significant interest in controlling her own claim. Regardless of a "pattern or practice" finding, each of them would

need to establish Combined's liability as to her individual claims. That individual interest remains present whether or not Radmanovich could obtain class certification. Second, as Combined points out, the nine plaintiffs who were voluntarily dismissed from this case have filed individual lawsuits in order to pursue their own claims. Neither party has offered evidence that any other potential class members have filed their own lawsuits. Third, because of the individual nature of the claims at issue in this case, the court finds no particular advantage to concentrating the litigation of all those claims in any one place. Furthermore, because of the many individual issues surrounding the discrimination claims in this case, there is minimal risk of duplicative litigation in litigating those claims individually. Each plaintiff will be responsible for establishing the elements of her own claims. Finally, given the method of individual proof of discrimination claims, it is extremely unlikely that separate courts will reach inconsistent determinations on common issues.

Radmanovich makes two arguments to support her position that the superiority requirement is satisfied in this case: (1) resolving this case through individual cases is not feasible because she and the other class members have only a "modest" prospect for damages and Combined's attorneys have burdened her with "extraordinary" discovery requests (Pl.'s Reply Mem., at 15.) and (2) not presenting this case as a class action would deprive the class members of the burden-shifting benefit of a pattern or practice showing. The court will address each of these arguments in turn. First, the court finds that this is not a situation in which class members would be entitled to a merely *de minimis* recovery. Also, the court cannot find that burdensome litigation costs are unique to this case. The court notes that the potential for only modest

recovery, despite routinely high litigation costs, does not deter many plaintiffs in comparable positions from filing individual employment discrimination actions. Second, the court agrees with Radmanovich that a pattern or practice finding benefits a plaintiff class in a discrimination class action by shifting the burden of proof to the defendant. However, that fact simply does not change the fact that class certification is not appropriate in a case such as this where individual issues will dominate the liability determination. Accordingly, the court is not persuaded by Radmanovich's arguments.

In conclusion, the court finds that: (1) the individual class members have significant interests in pursuing their claims in separate actions; (2) individual lawsuits have been filed by potential class members in this case; (3) there is no particular reason to concentrate this litigation in any particular forum; and, most significantly, (4) a class action would be totally unmanageable in this case. Therefore, the court concludes that Radmanovich has failed to meet her burden of establishing that a class action is a superior means of resolving this case. Accordingly, the court finds that the superiority requirement of Rule 23(b)(3) is not met.

Consequently, the court finds that Radmanovich has failed to satisfy both the predominance and superiority requirements of Rule 23(b)(3). Accordingly, the court denies Radmanovich's motion for class certification.

### III. CONCLUSION

For the foregoing reasons, the court denies plaintiff's motion for class certification.

Date: **JUN 2 6 2003**

James H. Alesia
United States District Judge

27