

FILED

JAN 1 2 2005

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

JU... ...ES B. ZAGEL
U... ...RICT COURT

| | |
|---|---|
| TRACI RADMANOVICH, on behalf of herself and others similarly situated, | ) ) ) |
| Plaintiff, | ) ) Case No. 01-C-9502 |
| v. | ) ) Judge James B. Zagel |
| COMBINED INSURANCE COMPANY OF AMERICA, | ) ) ) |
| Defendant. | ) |

DOCKETED
JAN 1 4 2005

| | |
|---|---|
| BRENDA PALMER, on behalf of herself and others similarly situated, | ) ) ) |
| Plaintiff, | ) ) Case No. 02-C-1764 |
| v. | ) ) Judge James B. Zagel |
| COMBINED INSURANCE COMPANY OF AMERICA, | ) ) ) |
| Defendant. | ) |

**CORRECTED STIPULATION OF SETTLEMENT AND CONSENT DECREE**

# TABLE OF CONTENTS

I.      PURPOSES OF THE CONSENT DECREE ...................................................................1

II.      INTRODUCTION ..........................................................................................................1

       A.      The Radmanovich Action ................................................................................1

       B.      Nine Additional Lawsuits Are Filed By Plaintiffs' Counsel ...................................3

       C.      Procedural Developments In The Ten Cases ................................................4

       D.      The Hamilton Action ......................................................................................6

       E.      The January 2004 Mediation ..........................................................................6

III.      DEFINITIONS...............................................................................................................8

IV.      JURISDICTION ..........................................................................................................10

V.      EFFECTIVE DATE AND DURATION OF CONSENT DECREE ...............................10

VI.      NO ADMISSION OF LIABILITY................................................................................11

VII.      SCOPE AND EFFECT OF SETTLEMENT ...............................................................12

       A.      Definition Of Settlement Class..............................................................................12

       B.      Settlement Scope.........................................................................................12

       C.      Mutual Release Of Claims ...............................................................................13

VIII.      DISMISSAL OF ACTIONS.........................................................................................15

IX.      GENERAL INJUNCTIVE PROVISIONS ...................................................................16

       A.      Harassment And Discrimination................................................................16

       B.      Retaliation ...................................................................................................16

X.      SPECIFIC INJUNCTIVE RELIEF PROVISIONS ......................................................17

       A.      Anti-Harassment And Anti-Discrimination Policy..............................................17

       B.      Consultant ...................................................................................................18

       C.      Sexual Harassment / Discrimination Training ........................................................19

       D.      Complaint Procedures.........................................................................................21

|  | E. | Policies Designed To Promote Supervisor Accountability | 24 |
|  | F. | Promotions | 26 |
|  | G. | Compensation | 28 |
|  | H. | The Monitors | 28 |
| XI. | | ENFORCEMENT OF THE CONSENT DECREE AND DISPUTE RESOLUTION PROCEDURES | 32 |
|  | A. | Enforcement Of The Consent Decree | 32 |
|  | B. | Dispute Resolution | 32 |
| XII. | | MONETARY RELIEF, NOTICE AND CLAIMS PROCEDURE | 33 |
|  | A. | The Settlement Amount | 33 |
|  | B. | Eligibility Requirements | 34 |
|  | C. | Procedures To Determine Eligibility And Award Amounts | 34 |
| XIII. | | CONFIDENTIALITY OF AWARDS/STATEMENTS TO THE PRESS | 36 |
| XIV. | | NOTICE TO THE CLASS, OBJECTIONS AND EXCLUSIONS | 37 |
|  | A. | Notice | 37 |
|  | B. | Objections And Exclusions | 38 |
| XV. | | CONFIDENTIALITY OF DOCUMENTS PROVIDED TO CLASS COUNSEL UNDER THE TERMS OF THIS CONSENT DECREE | 39 |
| XVI. | | MISCELLANEOUS PROVISIONS | 40 |
|  | A. | Calculation Of Time | 40 |
|  | B. | Counterparts | 40 |
|  | C. | Persons Bound By Consent Decree | 40 |
|  | D. | Construction | 40 |
|  | E. | Integration | 40 |
| XVII. | | MODIFICATION AND SEVERABILITY OF THE CONSENT DECREE | 40 |
| XVIII. | | NOTICES | 41 |

1.     Combined Insurance Company of America ("Combined") and the other parties to the above-captioned actions enter into the following Stipulation of Settlement and Consent Decree ("Consent Decree").

## I.     PURPOSES OF THE CONSENT DECREE

2.     The parties have entered into this Consent Decree for the following purposes:

a.     To maintain equal employment opportunities for all of Combined's agents, supervisors and managers;

b.     To promote compliance with Combined's anti-discrimination and anti-harassment policies;

c.     To enhance existing procedures for providing appropriate relief to members of the Settlement Class, as that term is defined below.

d.     To prevent retaliation against any person who might oppose any illegal employment practices and to promote compliance with Combined's policies against such retaliation; and

e.     To avoid further expensive and protracted litigation and to provide finality of claims and decisions.

## II.     INTRODUCTION

The factual background and procedural history of these cases are set forth below:

### A.     The Radmanovich Action

3.     On December 13, 2001, one current and nine former female agents and supervisors of Combined filed a Complaint against Combined, alleging that Combined was responsible for job-related sex discrimination and harassment under Title VII of the Civil Rights

Act of 1964, as amended, 42 U.S.C. §§ 2000e, et seq. ("Title VII").[1] See Radmanovich, et al. v. Combined, No. 01-C-9502.

    4.    In their Complaint, Plaintiffs sought to represent a class consisting of current and former female sales trainees, sales agents, supervisors and/or managers in Combined's Seventh Essential Sales Force. The Complaint in Radmanovich alleged that Plaintiffs and a proposed class of similarly-situated women had been discriminated against by Combined in, inter alia, promotions, training, compensation, hours, transfers and job assignments. The Complaint further alleged a pattern or practice of gender-based harassment at Combined as well as a hostile work environment. Plaintiffs sought classwide compensatory and punitive damages. The Radmanovich action was assigned to Judge James H. Alesia.

    5.    On February 5, 2002, Judge Alesia concluded that joinder of the Plaintiffs was improper under Fed. R. Civ. P. 20 and dismissed Plaintiffs' Complaint without prejudice.

    6.    On February 26, 2002, counsel for Plaintiffs filed an Amended Complaint, which identified Ms. Radmanovich as the sole class representative. The Amended Complaint continued to allege that Ms. Radmanovich and a proposed class of similarly-situated women had been discriminated against by Combined in promotions, training, compensation, hours, transfers and job assignments and that they had likewise been subjected to harassment and a hostile work environment. Ms. Radmanovich sought class-wide compensatory and punitive damages on behalf of "all women who, at any time on or after April 30, 1999, worked in the Seventh

---

[1]    The Plaintiffs who filed the Radmanovich action were Traci Radmanovich ("Ms. Radmanovich"), Cathy Aloffo ("Ms. Aloffo"), Terry Boebel ("Ms. Boebel"), Elke Budreau ("Ms. Budreau"), Maria Eason ("Ms. Eason"), Martha Mausshardt ("Ms. Mausshardt"), Vicky Miller ("Ms. Miller"), Patricia Schams ("Ms. Schams"), Bonnie Shaffer ("Ms. Shaffer") and Brenda Palmer ("Ms. Palmer").

Essential Sales Force of Combined and were sales agents or managers at some point during their employment with Combined."

### B. Nine Additional Lawsuits Are Filed By Plaintiffs' Counsel

7.      In addition to the re-filing of <u>Radmanovich</u>, Plaintiffs' counsel filed on March 8, 2002 nine additional cases on behalf of the other Plaintiffs who were originally named in the <u>Radmanovich</u> action. These cases were captioned: <u>Cathy Aloffo v. Combined</u>, No. 02-C-1768 (Leinenweber, J.); <u>Terry L. Boebel v. Combined</u>, No. 02-C-1772 (Coar, J.); <u>Elke M. Budreau v. Combined</u>, No. 02-C-1769 (Marovich, J.); <u>Maria Eason v. Combined</u>, No. 02-C-1770 (Gottschall, J.); <u>Martha Mausshardt v. Combined</u>, No. 02-C-1766 (Gottschall, J.); <u>Vicky A. Miller v. Combined</u>, No. 02-C-1773 (Leinenweber, J.); <u>Patricia Schams v. Combined</u>, No. 02-C-1771 (Lindberg, J.,); <u>Bonnie Shaffer v. Combined</u>, No. 02-C-1774 (Darrah, J.); and <u>Brenda Palmer v. Combined</u>, No. 02-C-1764 (Zagel, J.).

8.      Eight of these nine additional suits were brought as individual actions, while one of them -- the <u>Palmer</u> action -- was filed as another putative class action. The Plaintiff in <u>Palmer</u>, Ms. Palmer, sought to represent a class consisting of all women who worked in the Seventh Essential Sales Force of Combined at any time on or after March 8, 2002 and were sales agents or managers at some point during their employment with Combined. Like Ms. Radmanovich, Ms. Palmer alleged that she and a proposed class of similarly-situated women had been discriminated against by Combined in promotions, training, compensation, hours, transfers and job assignments and that she and the proposed class had likewise been subjected to harassment and a hostile work environment. Ms. Palmer sought classwide injunctive relief and punitive damages, as well as compensatory damages on behalf of herself only. The <u>Palmer</u> action was assigned to Judge James B. Zagel.

### C.      Procedural Developments In The Ten Cases

9.      Combined filed its answer in <u>Radmanovich</u> on March 12, 2002 and filed its answers in the remaining nine cases on April 26, 2002.  In these answers, Combined denied that Plaintiffs and the proposed classes in <u>Radmanovich</u> and <u>Palmer</u> had suffered any discrimination or harassment while at Combined.  Combined also set forth a number of other defenses to the claims being made by Plaintiffs in each of the actions.  Those defenses are set forth in full in the pleadings filed by Combined.

10.      Throughout the spring and summer of 2002, the parties engaged in extensive document and data discovery, with Combined producing to Plaintiffs thousands of documents and numerous data compilations.

11.      In August 2002, the parties agreed to stay all ten of these cases so that they could enter into mediation.  The parties continued to exchange relevant documents and data in preparation for the mediation.  The mediation itself was held in December 2002, with Linda Singer of ADR Associates, L.L.C. serving as the mediator.  The mediation, however, was unsuccessful, and active litigation resumed in January 2003.

12.      On May 1, 2003, Ms. Radmanovich filed a motion to certify a class of all women who worked in the Seventh Essential Sales Force of Combined at any time on or after April 30, 1999 and were sales agents or managers at some point during their employment with Combined.  Ms. Radmanovich sought certification of the proposed class under Fed. R. Civ. P. 23(b)(3).

13.      On May 20, 2003, Ms. Palmer filed a motion to certify a class of all women who worked in the Seventh Essential Sales Force of Combined at any time on or after April 30, 1999 and were sales agents or managers at some point during their employment with

4

Combined. Ms. Palmer sought certification of the proposed class under Fed. R. Civ. P. 23(b)(2) and 23(b)(3).

14. On June 26, 2003, Judge Alesia denied Ms. Radmanovich's motion for class certification. Although Judge Alesia found that Ms. Radmanovich had satisfied the requirements of subsection (a) of Fed. R. Civ. P. 23, he concluded that she failed to meet the requirements of subsection (b)(3) of that rule, and he concluded that the proposed class would be "totally unmanageable."

15. On August 13, 2003, Judge Lindberg granted Combined's motion for summary judgment in the <u>Schams</u> matter. Ms. Schams filed a notice of appeal on September 11, 2003.

16. On September 1, 2003, Judge Zagel granted Ms. Palmer's motion for class certification. In so ruling, Judge Zagel found that Ms. Palmer satisfied the requirements of subsections (a) and (b)(2) of Fed. R. Civ. P. 23. Judge Zagel further found (in the alternative) that Ms. Palmer satisfied the requirements of Fed. R. Civ. P. 23(b)(3).

17. On September 16, 2003, Combined moved for reconsideration of Judge Zagel's ruling granting class certification in <u>Palmer</u>.

18. On November 17, 2003, Judge Darrah granted Combined's motion for summary judgment in the <u>Shaffer</u> case. Ms. Shaffer filed a notice of appeal on November 25, 2003.

19. On January 16, 2004, Judge Coar granted Combined's motion for summary judgment in the <u>Boebel</u> matter. Ms. Boebel filed a notice of appeal on February 11, 2004.

5

### D.     The <u>Hamilton</u> Action

20.     On July 1, 2003 and shortly after Judge Alesia had denied class certification in <u>Radmanovich</u>, Plaintiffs' counsel filed a complaint styled <u>Hamilton, et al. v. Combined</u>, No. 03 C 4587. <u>Hamilton</u> was filed on behalf of 118 current and former female employees of Combined (the "<u>Hamilton</u> Claimants"), and these women asserted the same types of Title VII claims alleged in <u>Radmanovich</u> and the nine other cases discussed above. The individuals who filed <u>Hamilton</u> were members of the proposed class in <u>Radmanovich</u>. The <u>Hamilton</u> Claimants sought both compensatory and punitive damages. The <u>Hamilton</u> case was assigned to Judge Samuel Der-Yeghiayan.

21.     On February 5, 2004, Judge Der-Yeghiayan dismissed the <u>Hamilton</u> matter pursuant to Fed. R. Civ. P. 41(b). The <u>Hamilton</u> Claimants filed a notice of appeal with the United States Court of Appeals for the Seventh Circuit on March 3, 2004.

### E.     The January 2004 Mediation

22.     In November, 2003, the parties again agreed to mediation in an effort to settle all of the pending cases. That mediation was held on January 19 and January 20, 2004 before David Rotman of the mediation firm Gregorio, Haldeman and Piazza. Although the parties did not reach a settlement at the end of the two-day mediation, the parties continued to negotiate, with the able assistance of Mr. Rotman.

23.     On March 3, 2004, the mediator submitted to each side a "mediator's proposal," which proposal was further clarified by the mediator on March 8, 2004. The mediator proposed that all of the foregoing cases be settled for a total payment by Combined of $8.5 million, which amount would include payments to the Named Plaintiffs, the <u>Hamilton</u> Claimants,

the Settlement Class, Class Counsels' attorneys' fees, as well as the cost of notice and administration of the claims process under the settlement.

24.     On March 12, 2004, the parties indicated that they would accept the mediator's proposal and that they would negotiate in good faith the injunctive relief and other terms of this Consent Decree.

25.     Plaintiffs have vigorously prosecuted these cases, and Combined has vigorously defended them. While discovery has not yet been completed, Combined has produced to Class Counsel thousands of documents and millions of bytes of computer data relevant to both the class certification issue as well as Combined's defenses and the merits of the claims of Plaintiffs, the Hamilton Claimants and the members of the two proposed classes.

26.     The parties have engaged in extensive mediation and settlement negotiations since December 2002. As part of the negotiation process, Combined has provided Class Counsel with personnel and other employment-related information relating to Plaintiffs, the Hamilton Claimants and the members of the proposed classes in Radmanovich and Palmer. Combined has also produced statistical analyses as well as other relevant information during these negotiations. As a result of these negotiations, the parties have reached an agreement that is contained in this Consent Decree.

27.     The parties agree that the formal and informal discovery conducted in these actions, the depositions taken by both sides, the documents and data produced and the information exchanged during settlement negotiations and mediation are sufficient to assess the merits of the respective parties' positions, claims and defenses and to compromise the issues on a fair and equitable basis. This Consent Decree shall constitute a resolution of all claims that were asserted or could have been asserted in Radmanovich v. Combined, Palmer v. Combined,

7

Hamilton v. Combined, Aloffo v. Combined, Boebel v. Combined, Budreau v. Combined, Eason v. Combined, Mausshardt v. Combined, Miller v. Combined, Schams v. Combined and Shaffer v. Combined. As indicated by the signatures at the end of the document, the parties have consented to the entry of this Consent Decree.

## III.  DEFINITIONS

28.  In addition to the terms defined elsewhere in the Consent Decree, the following terms when used herein shall have the following meanings:

29.  "Best Efforts" means reasonable steps to realize or comply with the specified objectives to which the best efforts are directed.

30.  "Class" or "Settlement Class" is defined below in Section VII.

31.  "Class Counsel" or "Plaintiffs' Counsel" refers to Patricia Benassi and Athena M. Papachronis Herman of Benassi & Benassi, P.C. and Thomas Meites, Joan Burger, Paul Mollica, Shona Glink and Josie Raimond of Meites, Mulder, Burger & Mollica.

32.  "Class Period" or "Liability Period" means the period between April 30, 1999 and the Preliminary Approval Date for purposes of monetary relief and from April 30, 1999 to the final termination of this Consent Decree for purposes of injunctive and declaratory relief.

33.  "Class Member" means any member of the Settlement Class, as that term is defined herein.

34.  "Court" means the United States District Court for the Northern District of Illinois.

35.  "Defendant" or "Company" or "Combined" means Combined Insurance Company of America (including Combined Life Insurance Company of New York) and any predecessors or successors in interest, and the term "Seventh Essential Sales Force" shall refer to

8

the sales force in which Named Plaintiffs work or have worked and is understood to mean that sales force in the United States and Puerto Rico only.

36.     "EEO Mailing" is a notice sent by Combined once every four months to all sales agents, sales managers, district managers and executive level employees of the Seventh Essential Workforce containing the EEO and promotion policies described in Section X of this Consent Decree ("Specific Injunctive Relief Provisions"). These materials will not be physically attached to any other document, but they may be included in the same mailing as other materials.

37.     "Effective Date" shall refer to the date upon which final approval of the Consent Decree is granted by the United States District Court for the Northern District of Illinois.

38.     "Monitors" means the persons who have been jointly appointed to monitor this Consent Decree pursuant to Section X and their successors, if any.

39.     "Named Plaintiffs" refers to Traci Radmanovich, Brenda Palmer, Cathy Aloffo, Terry Boebel, Elke Budreau, Maria Eason, Martha Mausshardt, Vicky Miller, Patricia Schams, and Bonnie Shaffer.

40.     "Parties" means Combined and the Plaintiffs.

41.     "Plaintiffs" refers to the Named Plaintiffs and the Hamilton Claimants.

42.     "Preliminary Approval Date" means the date upon which Preliminary Approval of the Parties' Consent Decree was granted by the United States District Court for the Northern District of Illinois.

43.     Terms defined herein shall have the meaning set forth above and throughout this Consent Decree whether the term is capitalized or not.

## IV.    JURISDICTION

44.    The Court has jurisdiction over the Parties and the subject matter of these actions.  The pleadings filed in <u>Radmanovich</u>, <u>Palmer</u>, <u>Hamilton</u> and the other pending cases contain claims that, if proven, would authorize the Court to grant the monetary and equitable relief set forth in this Consent Decree.  Venue is proper in this district.

45.    This Court shall retain jurisdiction of these actions during the duration of the Consent Decree for the purpose of resolving all disputes, interpreting and enforcing this Consent Decree and otherwise entering all orders and agreements that may be necessary to implement the relief provided herein.

## V.    EFFECTIVE DATE AND DURATION OF CONSENT DECREE

46.    The injunctive provisions and agreements contained herein shall be effective immediately upon the Effective Date.

47.    Except as otherwise provided herein, the provisions of this Consent Decree and the agreements contained herein shall remain in effect for three years from the Effective Date.  Unless further extensions are granted by the Court pursuant to the procedures set forth in Paragraph 48 below, the Consent Decree shall expire without further action of the Parties on the third anniversary of the Effective Date.

48.    At any time prior to one hundred twenty (120) days before the third anniversary of the Effective Date, Class Counsel may petition the Court to extend the Consent Decree for one additional year, provided that Class Counsel can demonstrate to the Court that Combined has substantially failed to perform any of its material obligations under the Consent Decree.  Combined may respond to any such application in accordance with the Local Rules of

the Court. The Court may extend the Consent Decree for one year (or shorter) only if the

conditions set forth above are established by Class Counsel by a preponderance of the evidence.

## VI.    NO ADMISSION OF LIABILITY

49.    The Court has made no findings concerning Combined's alleged

violations of Title VII or any other federal, state or local law, regulation, order or rule. The

Court has likewise made no findings or determinations with respect to the presence or existence

of any harassment or discrimination alleged by the Plaintiffs and/or the Settlement Class.

Moreover, the Court has made no finding or determination that there was or is a pattern or

practice of either harassment or discrimination at Combined. Accordingly, this Consent Decree

shall not constitute and shall not be used in this or any other case or action as evidence of any

such violation of Title VII or any other federal, state or local law, regulation, order or rule. If for

any reason settlement of these matters is not effectuated, no evidence of this stipulation and

proposed Consent Decree shall be admissible for any purpose in this or any other action.

50.    By agreeing to and voluntarily entering into this Consent Decree, there is

no admission or concession (express or implied) by the Plaintiffs or Combined that Combined

has or has not in any way violated Title VII or any other federal, state or local law, regulation,

order or rule. This Consent Decree does not contain and will not be interpreted or construed to

contain any such admission. The Parties agree that they will not now or hereafter argue or

contend that it can or should be treated as such.

51.    Without limiting the foregoing in any way, nothing contained herein shall

be construed as an admission by Combined that its agents or supervisors are not independent

contractors within the meaning of Title VII or any other federal, state or local law. Moreover,

Combined expressly reserves the right to take the position in any other proceeding that some or

11

all of its agents or supervisors are independent contractors, and Combined likewise reserves the

right to take whatever steps it deems appropriate to further confirm the status of some or all of its

agents and/or supervisors as independent contractors. In the event, however, that Combined

takes the position that some or all of its agents and/or supervisors are independent contractors or

takes steps to confirm their status as such, the terms of the Consent Decree shall remain binding

on Combined through the duration of this Consent Decree.

## VII.  SCOPE AND EFFECT OF SETTLEMENT

### A.  Definition Of Settlement Class

52.    For settlement purposes only, pursuant to Federal Rule of Civil Procedure

23(b)(2), the Court hereby certifies, for purposes of injunctive and declaratory relief, a class

described as follows: All women who at any time between April 30, 1999 and the final

termination of the Consent Decree, are working, have worked or will work in the Seventh

Essential Sales Force of Combined and were sales trainees, sales agents, supervisors and/or

managers at some point during their employment with Combined.

53.    For settlement purposes only, the Parties stipulate, for purposes of

monetary relief only, to the certification of a class under Federal Rule of Civil Procedure

23(b)(3) described as follows: All women who, at any time between April 30, 1999 and August

3, 2004 worked in the Seventh Essential Sales Force of Combined and were sales trainees, sales

agents, supervisors and/or managers at some point during their employment with Combined.

### B.  Settlement Scope

54.    This Consent Decree is intended to and does effectuate a full, final and

complete resolution of all allegations of gender-based discrimination, including but not limited

to, harassment and/or retaliation occurring on or before the Preliminary Approval Date, that were

12

or could have been brought by or on behalf of the Plaintiffs and/or one or more members of the classes they seek to represent, including but not limited to all claims arising under federal, state and/or local laws as well as any and all claims for attorneys fees and costs.

### C.    Mutual Release Of Claims

55.    The negotiation and entry of this Consent Decree have been undertaken by the Parties for the purpose of settling all claims of harassment, hostile work environment and/or discrimination that Plaintiffs and the members of the Settlement Class have brought against Combined or could have brought in one or more of the lawsuits being settled through entry of this Consent Decree.  On the Effective Date, the Plaintiffs and all members of the Settlement Class who did not opt-out, both individually and as a class, for themselves, their attorneys, spouses, executors, representatives, heirs, successors, attorneys and assigns and any other persons who could claim through them, in consideration for the monetary and injunctive relief set forth herein, the sufficiency of which consideration is expressly acknowledged, fully and finally release and forever discharge Combined, its present and former parents, affiliated or subsidiary companies and each of their respective present, former and future officers, directors, shareholders, agents, employees, representatives, consultants, attorneys, successors and assigns and their respective pension, profit-sharing, savings and other employee benefit plans of any nature and those plans' fiduciaries, representatives, trustees and administrators (the "Released Parties") from any and all past and/or present claims, rights, demands, administrative charges, complaints, actions, causes of action, obligations or liabilities of any and every kind for individual relief and/or class injunctive and monetary relief (including without limitation all forms of front pay, back pay, compensatory and/or punitive damages) based upon any and all claims of harassment and/or discrimination (whether known or unknown) that arose before the

13

Preliminary Approval Date, including but not limited to any and all claims for hostile work
environment, harassment or discrimination relating to job assignments, premium assignment,
compensation, job training, discipline, promotions, training or any other terms, conditions,
benefits or privileges of employment and further including without limitation any such claims
that any member of the Settlement Class may have filed or caused to be filed in any complaint
before any court of law or before any administrative agency (state, federal or local) or before any
arbitrator or board prior to the Preliminary Approval Date.

56.     Without limiting the foregoing in any way whatsoever, the Plaintiffs shall
also generally release the Released Parties from any and all claims, rights, demands, charges,
complaints, actions, causes of action, obligations or liabilities of any and every kind whether
related to harassment or discrimination or not that arose prior to the Preliminary Approval Date
(whether known or unknown).

57.     This Consent Decree specifically releases any and all class and individual
claims of harassment and/or discrimination underlying the allegations contained in Plaintiffs'
EEOC charges and/or the initial complaints and amended pleadings in these actions for both
monetary and injunctive relief.  This Consent Decree also resolves all claims for attorneys' fees
and expenses incurred and/or to be incurred in the claims process in Radmanovich v. Combined,
Palmer v. Combined, Hamilton v. Combined, Aloffo v. Combined, Boebel v. Combined,
Budreau v. Combined, Eason v. Combined, Mausshardt v. Combined, Miller v. Combined,
Schams v. Combined and Shaffer v. Combined.  Class Members who currently have claims
pending in any administrative proceeding (federal, state or local), in any complaint before a court
of law or before an arbitrator or board will receive the Special Notice attached to this agreement
as Attachment 2.  The Special Notice will inform such Class Members that they must file a

14

timely "opt-out" statement as described in Paragraph 129 of the Consent Decree if they want to continue to pursue their independent claims against Combined. The Special Notice will explain that if such Class Member does not file a timely "opt-out" statement, any claims she currently has pending in any other proceeding will be extinguished by the terms of this Consent Decree. All such Class Members who do not submit a timely opt-out statement shall have the right to participate fully in the benefits of this Consent Decree including the right to submit a claim for a monetary award pursuant to Section XII of this Consent Decree. The Special Notice will be sent to each Class Member identified by Combined with a currently-pending claim and to her attorney of record (if any).

58.    Combined, on behalf of itself, its representatives, heirs, successors, agents, attorneys and assigns and any other persons or entities who could claim through it, in consideration for the entering into the terms of this Consent Decree, the sufficiency of which consideration is expressly acknowledged, generally releases and forever discharges Plaintiffs from any and all claims, rights, demands, charges, complaints, actions, causes of action, obligations or liabilities of any and every kind that arose prior to the Preliminary Approval Date (whether known or unknown).

59.    The releases contained herein shall survive the expiration of the Consent Decree.

### VIII.    DISMISSAL OF ACTIONS

60.    The Parties agree that with the exception of Radmanovich and Palmer, all of the pending cases to which the Plaintiffs are parties should be dismissed as soon as practicable. To this end, the parties agree to execute a Joint Motion to Dismiss within fifteen

(15) days after the Effective Date. Radmanovich and Palmer shall, in turn, be dismissed with prejudice upon the expiration of this Consent Decree.

## IX.    GENERAL INJUNCTIVE PROVISIONS

### A.    Harassment And Discrimination

61.    Combined and its officers, management and successors and assigns, or any of them, are enjoined and restrained from: (i) discriminating against women on the basis of sex or gender; (ii) engaging in or being a party to any action, policy or practice that is intended to or known to have the effect of sexually harassing or intimidating any female employee on the basis of her gender; (iii) creating, facilitating or knowingly tolerating the existence of a work environment that is sexually hostile to females; and (iv) taking any adverse action or retaliating against any person in the Seventh Essential Sales Force because the that person opposed, refused to implement or otherwise objected to any practice, policy or act of gender discrimination or harassment against workers at Combined.

### B.    Retaliation

62.    Combined and its officers, agents, management, successors and assigns, or any of them, are hereby enjoined from engaging in, implementing or knowingly tolerating any action, policy or practice with the purpose of retaliating against any current or former worker in Combined's Seventh Essential Sales Force because he or she opposed any practice of gender discrimination, sexual harassment or gender-based harassment; filed a charge of discrimination alleging any such practice; testified or participated in any manner in any investigation (including, without limitation, any internal investigation undertaken by Combined), proceeding or hearing in connection with these cases and/or relating to any claim of gender discrimination, sexual harassment or gender-based harassment; was identified as a possible witness in these actions;

16

asserted any rights under this Consent Decree; or sought and/or received any monetary and/or non-monetary relief in accordance with this Consent Decree. Moreover, Combined and its officers and management shall not take any adverse action or retaliate against any worker in the Seventh Essential Sales Force because the worker opposed, refused to implement or otherwise objected to any practice, policy or act of sexual harassment or gender-based discrimination by or at Combined. Without limiting the foregoing, it is not the intent of the parties to limit Combined's rights to transfer, discipline or discharge workers where that would otherwise be appropriate.

## X.    SPECIFIC INJUNCTIVE RELIEF PROVISIONS

### A.    Anti-Harassment And Anti-Discrimination Policy

63.    Combined reaffirms the following Statement Against Sexual Harassment and Gender-Based Discrimination:

Combined Insurance Company of America is committed to maintaining a policy against discrimination and harassment, including:

Harassment or discrimination based on sex, race, national origin, ethnicity, color, religion, age, disability or sexual orientation;

Retaliation against persons who complain of such harassment or discrimination or who cooperate in the investigations of such complaints; and

Combined is dedicated to responding promptly and appropriately to any acts of harassment, discrimination or retaliation; to maintaining a disciplinary system that is designed to deter future acts of harassment, discrimination or retaliation; and to maintaining a work environment for its workers that encourages tolerance, respect and dignity.

This paragraph does not create any contractual causes of action or other rights that would not otherwise exist.

17

### B.     Consultant

64.     Combined will hire a consulting firm mutually-agreed upon by the Parties to assist it in reviewing and revising its Equal Employment Opportunity ("EEO") policies, EEO complaint investigation procedures and training programs. The consulting firm must have experience in aiding corporations in formulating and implementing corporate EEO programs.

65.     Within 120 days of the Effective Date or at a later date agreed to by the Parties, the consulting firm will review Combined's EEO policies (including but not limited to its problem-solving procedure, investigation procedures and the training program used by Combined's Human Resource Department to train agents, managers and other staff) and prepare a written report describing the efficacy of those policies and procedures. This report will be distributed to Combined, the Monitors and Class Counsel. In this written report, the consulting firm will make recommendations (if any) as to whether Combined's existing EEO policies and training programs should be maintained in their current form or revised. Class Counsel agree to maintain the confidentiality of the consultant's report. Combined will provide to Class Counsel and the Monitors a summary of the actions taken (if any) in response to the recommendations of the Consultant.

66.     The recommendations of the consulting firm must be consistent with the terms of this Consent Decree, and Combined shall be under no obligation to implement policies or procedures that are inconsistent with this Consent Decree.

67.     Combined agrees to give serious consideration to any recommendations made by the aforementioned consulting firm. If Combined elects to not implement any recommendation, it will explain in writing the basis for its decision. Such explanation will be distributed to Class Counsel and the Monitors. Without limiting the foregoing, this paragraph

18

shall not be construed to impose obligations on Combined that are not specified in this Consent Decree or otherwise imposed by law.

68.     In addition to the above, the consulting firm will assist Combined in providing the train-the-trainer instruction.

### C.     Sexual Harassment / Discrimination Training

69.     Combined agrees that it will maintain a human resources training program for the Seventh Essential Sales Force. That training will include:  (1) anti-harassment/Equal Employment Opportunity ("EEO") training (as described below in Paragraph 70) for all newly-hired sales agents at Combined's Sales School; (2) a refresher course for persons at the level of sales manager and above who have not received any training for a period of one (1) year; (3) training for all newly-promoted supervisors (at every level) as part of Junior Executive Training ("JET"); and (4) advanced training for management and executive positions (i.e., sub-regional managers and above).

70.     At a minimum, the subjects to be covered by the training referenced in Paragraph 69 shall include:  (i) federal and state equal employment opportunity laws, including but not limited to the general provisions of these laws and the basis on which discrimination is prohibited under these laws; (ii) the application of equal employment opportunity law to typical employment situations, including but not limited to promotion decisions, work assignments, training and other career advancement opportunities; (iii) review of Combined's internal complaint procedure; (iv) responding to complaints of harassment; (v) responding to complaints of discrimination in the distribution of opportunities, resources and services such as lead and referral cards, territorial assignments, management support; and (vi) supervisory follow-up on

19

EEO complaints, including but not limited to prohibition against retaliation, working with the complainant and consideration of appropriate discipline for the offender.

71.     All such training shall be conducted by Combined's Human Resources Department or by trainers or investigators who have completed train-the-trainer instruction. The Parties agree that Combined may use audio-visual materials (as appropriate) for purposes of the training described in Paragraph 70. Combined shall, however, use its best efforts to utilize live trainers for purposes of the training at Combined's Sales School and JET.

72.     Combined agrees that it shall have a senior management official communicate Combined's commitment to its EEO policies at the beginning of all sexual harassment training. Audio-visual materials may be used for this component of training in all instances.

73.     Newly-promoted district managers shall receive the training referenced in Paragraph 70 within six (6) months of the date of their promotion or initial hiring into the district manager position. Any other person attaining a management or executive position in the Seventh Essential Sales Force who did not receive the foregoing training upon being promoted to the position of district manager shall receive such training within four (4) months of attaining a management or executive position in the Seventh Essential Sales Force.

74.     In addition to any other training specified in this Consent Decree, Combined shall develop a diversity training program for all newly-promoted supervisors and managers in the Seventh Essential Sales Force to continue to promote the maintenance of a diverse work force. It is understood, however, that this diversity training may be part of the training described in Paragraph 70.

20

75. Combined has voluntarily created the position of Affirmative Action Manager and agrees to maintain this position during the life of the Consent Decree. Combined agrees that the duties of its Affirmative Action Manager will include, among other things, the development and implementation of the foregoing diversity program. The Affirmative Action Manager will hold a position at Combined's corporate headquarters and report directly to both the Director of Human Resources and the President of Combined.

76. With the assistance of the Affirmative Action Manager, the Director of Human Resources shall oversee the implementation of the non-monetary provisions of this Consent Decree, including provisions relating to the distribution of EEO policies and the implementation of new promotion procedures. Combined's Director of Human Resources and the Affirmative Action Manager shall act as Combined's primary contacts with the Monitors.

### D.     Complaint Procedures

77. Combined agrees to provide workers in the Seventh Essential Sales Force with mechanisms and procedures designed to provide those workers with convenient, confidential and reliable means for reporting incidents of gender-based harassment, discrimination and/or retaliation. To that end, Combined agrees that it will create three new positions in its Human Resources Department. The persons holding those positions will report directly or indirectly to Combined's Director of Human Resources (currently Nancy Gross). The new positions will be titled "Human Resources Field Area Specialist." A primary purpose of these new positions will be to provide a Human Resources presence in the field to Combined's agents, supervisors and managers. One of these Specialists shall be located on the East Coast, one shall be located in the Mid-West and one shall be located on the West Coast. These Specialists will have duties and responsibilities that include, among other things: (1) serving as a

resource for complaints of sexual harassment and/or gender-based discrimination and communicating complaints to Combined's Human Resource Department for investigation; (2) investigating complaints from agents and supervisors of discrimination in the distribution of resources and services in the field such as lead and referral cards, territorial assignments, training and management support, (3) assisting in investigations of complaints made or referred to Combined's Human Resources Department; and (4) periodically attending field meetings as practicable (including Ardmores, sales meetings and other such meetings) to promote compliance with Combined's EEO policies. At meetings they attend, these Specialists will generally provide Human Resource accessibility to agents, supervisors and managers. The names, responsibilities, work locations and telephone numbers of these Specialists shall be disseminated to Combined's work force through a posting on Combined's website and through the EEO Mailing.

78.    Combined agrees that it will also designate at least two individuals from its Human Resources Department as persons who may be contacted regarding complaints or concerns relating to discrimination or harassment. The titles, responsibilities, work locations and telephone numbers of these two persons shall be routinely disseminated in the same manner described in Paragraph 77 above to workers in the Seventh Essential Sales Force. As part of its complaint procedure, Combined agrees that a 24-hour toll free Ethics hotline shall be maintained on Combined's behalf by one of its corporate affiliates and that Combined shall take seriously anonymous complaints received on the hotline, to the extent investigation is possible based upon the information provided in the anonymous complaint. As part of its complaint procedure, Combined agrees that it shall maintain in its Human Resources Department personnel charged with handling complaints of gender discrimination, gender-based harassment and retaliation.

79.    Combined shall promptly investigate all complaints concerning alleged harassment and/or discrimination in the Seventh Essential Sales Force. Specifically, Combined agrees that it shall make best efforts to investigate all complaints of sexual harassment and/or retaliation promptly and to complete investigations within five (5) weeks. Combined will further make best efforts to prepare its written findings of the results of each investigation and the remedial actions proposed, if any, within fourteen (14) days after completion of the investigation, and Combined shall thereupon promptly communicate to the complaining party the results of the investigation and the remedial actions taken or proposed (if any) so long as the complainant agrees to keep any disciplinary action confidential. The failure of any Combined employee to maintain such confidentiality will warrant disciplinary action by Combined up to and including termination.

80.    The following procedures will be utilized by Combined in investigating allegations of gender-based harassment, discrimination or retaliation:

a.    All interviews of complainants and alleged harassers will be conducted in person, except in specific circumstances where it is not feasible to do so. In the event that an in-person interview of a complainant or harasser is not feasible, Combined shall set forth in the written report for that investigation the reason or reasons why an in-person interview was not feasible.

b.    Interview notes will be summarized in memorandum form ("interview memorandum") and the interviewee will be asked to review the interview memorandum for accuracy. The witness will be given an opportunity to add information he or she believes should be included in the interview memorandum. Interviewed persons will be asked to sign the interview memorandum certifying they have reviewed the notes for accuracy and completeness and been given an opportunity to add information.

c.    All interviewed persons will be asked to identify potentially corroborating or contradictory witnesses and those named witnesses will be interviewed in the same manner as described in subsections (a) and (b) above.

d.    The written reports will contain credibility assessments if, in the determination of the interviewer, such an assessment is possible. If a

23

credibility assessment is made, the basis for that assessment will be provided in the report. If a credibility assessment is not made, the reasons for the failure to make such an assessment will be provided in the report.

e.    A record-keeping system will be maintained that can be used to identify complaining parties, accused parties, witnesses interviewed, investigators' recommendations and actions taken.

81.    Combined will disseminate its EEO policies and problem-solving procedures to agents, supervisors and managers in the Seventh Essential Sales Force through a posting on Combined's website, periodically reiterating the policies at district, sub-regional and regional meetings (including Ardmores) and distributing the policies to all persons attending Combined's Sales School, JET programs and the advanced EEO training. In addition, Combined will disseminate these materials in the EEO Mailing. Without in any way limiting the foregoing or Combined's obligations hereunder, the Parties acknowledge that Combined's work force is geographically diverse and that Combined's agents and supervisors do not typically maintain central offices or work locations.

82.    For the duration of this Consent Decree, Combined will maintain records of all EEO complaints, investigations and all actions taken in response to these complaints. These records will be made available to the Monitors quarterly or upon request.

83.    Nothing contained herein shall be construed so as to negate or limit Combined's obligation to be mindful of the rights of all persons (including the accuser, the accused and all witnesses) in the conduct of the foregoing investigations and the imposition of discipline as it is deemed necessary and appropriate.

**E.    Policies Designed To Promote Supervisor Accountability**

84.    Combined agrees that it shall impose discipline up to and including suspension, demotion and termination upon any supervisor or manager in the Seventh Essential

Sales Force (1) who engages in sexual harassment or gender-based discrimination, (2) who knowingly tolerates any such conduct in his or her presence or among persons under his or her supervision without reporting such conduct to Combined's Human Resources Department or (3) who retaliates against any person who complains or participates in any investigation or proceeding concerning any such conduct. Combined shall communicate this policy to all agents, supervisors and managers.

85.     Combined agrees that it shall continue to advise all managers and supervisors in the Seventh Essential Sales Force of their duty to be alert to possible violations of Combined's Anti-Harassment and Anti-Discrimination Policy and to report to Combined's Human Resources Department any incidents, complaints and/or allegations of sexual harassment, gender-based discrimination and/or retaliation of which they become aware. Managers and supervisors who fail to report incidents, complaints or allegations of sexual harassment or gender discrimination will be subject to discipline up to and including suspension, demotion and termination.

86.     Combined agrees that for supervisors and managers in the Seventh Essential Sales Force who receive performance reviews, it shall include in those performance evaluations compliance with Combined's Anti-Harassment and Anti-Discrimination Policy and the promotion of diversity in the work place as elements in the review process and link such evaluations directly to a supervisor/managerial bonus structure, to the extent such bonuses are based on factors other than sales performance.

87.     Combined will create a new award that recognizes excellence in promoting Combined's commitment to ensuring an environment that is free from discrimination and harassment. This award will be given annually to the person or persons who, in the

estimation of Combined's Human Resources Department in consultation with Combined's senior

management, contributed the most t o ensuring and maintaining a work place free of harassment

and discrimination and encouraging diversity. As practicable, this award will be presented by

the CEO of Combined.

### F.    Promotions

88.    Combined will reemphasize its commitment to promoting qualified female

applicants. To that end, Combined will confirm this commitment as appropriate at Sales School,

JET training and in the training described in Paragraph 70. Combined will also create a

management network for women that will include (i) a mentoring program and (ii) an outreach

program designed to encourage women to pursue promotional opportunities at Combined

through the pooling system described in Paragraph 92.

89.    For the duration of the Consent Decree and as part of the pooling program

described in Paragraph 92, Combined will track promotions in the Seventh Essential Sales Force

by gender to the positions of district, sub-regional and regional manager. Records will be

maintained setting forth the individuals expressing interest, ultimately considered and then

selected for promotion to district, sub-regional and regional manager positions. Combined will

prepare semi-annual reports containing this information. These reports will be distributed to the

Monitors and Class Counsel.

90.    Combined will make best efforts to achieve a level of promotion of

females to the positions of district, sub-regional and regional manager that approximately

correlates with the number of qualified female applicants for those positions who have placed

their names and resumes in the pools described in Paragraph 92. The foregoing, however, shall

not be construed or otherwise understood to impose any sort of quotas on Combined or to completely eliminate the discretion of management.

91.     Objective written criteria for promotion to district, sub-regional and regional manager positions in the Seventh Essential Sales Force will be distributed at Combined's Sales School, posted on Combined's website, reiterated at JET Training and periodically referenced in Company meetings and newsletters. In addition, it will be included in the EEO Mailing.

92.     For the positions of district manager and above, persons who meet the objective criteria referenced in Paragraph 91 may post their resumes and an expression of interest in one or more positions on a website maintained by Combined. In addition, persons who meet the objective criteria may mail or e-mail their resumes to Combined's Director of Human Resources. To maintain current data, persons expressing interest will be required to repost their resumes annually on January 15th or some other date as established by Combined. Combined's promotion posting policy will be posted on Combined's website, explained at Combined's Sales School and at JET Training and periodically referenced in Company meetings and newsletters. In addition, it will be included in the EEO Mailing.

93.     Combined will make promotions from the pool of persons who have submitted a current resume, except in exigent circumstances (e.g., where the pool in question is empty or where the persons in the pool do not meet the objective criteria for the position at issue). Unless a candidate states otherwise, it will be assumed that submission of a resume is an expression of interest in any available promotion within a region (in the case of candidates for the position of district manager and below) or country (in the case of persons applying for positions at the level of sub-regional manager and above).

27

94.     Combined shall maintain records on each job filled through the pool system described in Paragraph 92, including the name and gender of the person selected for the position and the name and gender of each person who applied for but was not selected for that position in the Seventh Essential Sales Force.

## G.     Compensation

95.     Combined will make best efforts to ensure that resources and opportunities are equitably distributed.  To that end, Combined agrees that the need to equitably distribute resources (e.g., referral and lead cards) will be emphasized in training for its supervisors and managers, as will the need to be sensitive in the assignment process to the individual preferences and availability of agents.  Combined further agrees that one of the principal duties of the Human Resources Field Area Specialists (referenced in Paragraph 77) will be to field, address and investigate complaints and concerns from agents and supervisors regarding the distribution of resources, and agents and supervisors will be apprised of this resource and function of the Human Resources Field Area Specialists at Combined's Sales School and in JET.

## H.     The Monitors

96.     Upon final approval of this Consent Decree by the Court, two Monitors will be appointed to oversee the implementation by Combined in the Seventh Essential Sales Force of the terms of this Consent Decree.  For the term of this Consent Decree, the Monitors will have authority under Court supervision to assess and monitor Combined's compliance with the terms of this Consent Decree.

97.     The programs and procedures subject to oversight by the Monitors shall include the efficacy of Combined's complaint procedure, the quality of investigations undertaken in response to complaints as well as the propriety of the discipline (if any) imposed as a result of

such investigations. This includes responsibility for periodically reviewing allegations of sexual harassment, gender-based discrimination and retaliation and Combined's response to these allegations, including but not limited to Combined's investigation of the allegations and actions taken in response to the investigation. The Monitors shall also monitor the efficacy and success of the pooling program described in Paragraph 92 as a means of allowing qualified female applicants interested in advancement to pursue supervisory and management positions in the Seventh Essential Sales Force. In addition, the Monitors shall periodically review individual promotion decisions at the level of district manager and above for which a woman had submitted a resume to ensure that Combined is complying with the letter and spirit of this Consent Decree.

98.    In the event that the Monitors conclude that Combined has materially failed to meet its commitment under this Consent Decree to undertake effective investigations and impose appropriate discipline as called for by the circumstances presented, the Monitors may bring their views in this regard to the attention of Class Counsel. Class Counsel may then raise the issue with Combined, and Combined and Class Counsel will make a good faith effort to resolve any perceived problems in the manner contemplated by the dispute resolution procedure set forth herein at Paragraph 107. If a resolution cannot be reached between Combined and Class Counsel, Class Counsel may then raise the issue with the Court, with the burden being on Class Counsel to prove by a preponderance of the evidence a material deviation from the procedures set forth in Section X-D. The Court shall award Class Counsel reasonable fees and costs if they are the prevailing party. In no event, however, shall Class Counsel seek an award in excess of $50,000, nor shall Combined be obligated to pay any award in excess of $50,000. Combined may petition the Court to award fees if it can prove by a preponderance of the evidence that the action was frivolous or that Class Counsel acted in bad faith.

29

99. In the event that the Monitors conclude that Combined has materially failed to meet its commitment to maintain the pooling system described in Paragraph 92 and to promote qualified female applicants who express interest to the positions of district, sub-regional and regional manager in numbers approximately proportional to the representation of qualified female applicants in the pools described in Paragraph 92, the Monitors may bring their views in this regard to the attention of Class Counsel. Class Counsel may then raise the issue with Combined, and Combined and Class Counsel will make a good faith effort to resolve any perceived problems in the manner contemplated by the dispute resolution procedure set forth herein at Paragraph 107. If a resolution cannot be reached between Combined and Class Counsel, Class Counsel may then raise the issue with the Court with the burden being on Class Counsel to prove by a preponderance of the evidence a material deviation from the procedures called for by Section X-F. In no event, however, shall any such request for fees and costs exceed $50,000. Combined may petition the Court to award fees if it can prove by a preponderance of the evidence that the action was frivolous or that Class Counsel acted in bad faith.

100. The Monitors shall be agreed to by the Parties. If the Parties are unable to agree on the Monitors before the date of the final fairness hearing, the Parties agree to engage in non-binding mediation with the Court. If the parties still do not agree, any of the Parties may void this agreement within seven (7) days of the final fairness hearing.

101. On the first anniversary of the Effective Date and on each annual anniversary date thereafter until the Consent Decree expires, the Monitors shall complete their own review of Combined's compliance with this Consent Decree and shall submit a confidential status report to Class Counsel and Combined setting forth Combined's progress in meeting its obligations under this Consent Decree. This report must include the Monitors' conclusions

30

regarding the effectiveness of the complaint, promotion and training procedures implemented by Combined.

102.    Combined shall cooperate with the Monitors in connection with their efforts to oversee and monitor compliance with the Consent Decree, including providing access to all documents and persons the Monitors consider relevant as well as other sources of information, in whatever form they are maintained in the ordinary course of business,. The Monitors shall use their best efforts to minimize the disruption to the workplace during the course of their oversight.  Given the need of the Monitors to review confidential business information of Combined, the Monitors will sign a confidentiality agreement.

103.    Combined shall be responsible for the implementation of all non-monetary relief under the terms of this Consent Decree, except as otherwise provided herein.  Combined shall not be precluded from developing and implementing its own programs as it may deem appropriate.  In formulating their determinations and recommendations, the Monitors will take such programs into account.

104.    Combined shall compensate the Monitors at their customary rate or upon other terms acceptable to the Monitors.  Combined shall also pay any and all reasonable costs and expenses incurred by the Monitors as is necessary to fulfill their duties.

105.    The work of the Monitors shall continue for the full term of this Consent Decree, unless extended.  In the event the Monitors are unable or unwilling to continue to serve for the full term of the Consent Decree, then Combined and Class Counsel shall jointly designate another person to serve in their stead.

## XI.   ENFORCEMENT OF THE CONSENT DECREE
## AND DISPUTE RESOLUTION PROCEDURES

### A.   Enforcement Of The Consent Decree

106.   Within two (2) weeks after final approval of this Consent Decree, Combined shall post on the agent's website a notice in the form of Exhibit A attached to this Consent Decree. In the event that the person and/or departments to whom individuals should make complaints alleging sexual discrimination, gender-based harassment and/or retaliation change during the term of the Consent Decree such that the information contained on the Notice is no longer accurate, Combined shall immediately notify Class Counsel, who shall then prepare and deliver to Combined a new notice that contains correct information. Combined shall thereupon promptly replace the old notices with the revised notices. Combined shall also provide a copy of the Consent Decree to any agent, supervisor or manager in the Seventh Essential Sales Force who requests one.

### B.   Dispute Resolution

107.   In the event that the Parties to this Consent Decree or any member of the Settlement Class believes that another party has failed to comply with any provision of the Consent Decree, the complaining party shall notify the alleged non-complying party in writing of such non-compliance and afford the alleged non-complying party forty-five (45) days to remedy the non-compliance or satisfy the complaining party that the alleged non-complying party has complied. If the allegedly non-complying party has not remedied the alleged non-compliance or satisfied the complaining party that it has complied within the foregoing period, the complaining party may apply to the Court for appropriate relief. In the event that a dispute is pending upon the expiration date of this Consent Decree, then the term of this Consent Decree shall be

extended solely with respect to the issue in dispute, until such time as such dispute is resolved by the Parties or the Court.

## XII.     MONETARY RELIEF, NOTICE AND CLAIMS PROCEDURE

### A.     The Settlement Amount

108.    All monetary claims, including those for attorneys fees costs and expenses, resolved by this Consent Decree shall be settled for the total sum of $8.5 million (the "Settlement Amount"), which shall be allocated as follows:

      a.     The Named Plaintiffs shall receive a total of $480,000;

      b.     The two class representatives, Traci Radmanovich and Brenda Palmer, shall each receive $90,000 in settlement of their individual claims and $20,000 as an incentive payment for their assistance in the litigation, for a total of $110,000 each;

      c.     The Hamilton Claimants shall receive a total of $1,770,000;

      d.     Class counsel shall receive such amounts as the Court awards for attorneys fees, not to exceed $1,280,000 and such amounts as the Court awards for costs of litigation, not to exceed $750,000; and

      e.     The balance of $4,000,000 shall be allocated to the Settlement Class as set forth below in Sections XII-B and XII-C.

109.    Class Counsel specifically agrees not to seek a multiplier in their petition for fees and reimbursement of the costs of litigation. Combined specifically agrees not to object to Class Counsel's petition for fees and reimbursement of the costs of litigation.

110.    With respect to FICA, FUTA and SUTA tax payments, Combined, the Plaintiffs and the Settlement Class will each bear their own respective tax liabilities as employer and employees. Combined will pay the employer portions of such taxes (as applicable) in addition to and not out of the Settlement Fund.

111. Within fifteen (15) days of the issuance of any Court Order directing payment to Class Counsel and/or the Named Plaintiffs, Combined shall issue checks in accordance with the Order. Class Counsel shall provide Combined with the exact amount due Class Counsel and the Named Plaintiffs thirty (30) days before the final fairness hearing. It is further the understanding of the Parties that the issuance by the Court of the order directing payment to Class Counsel, the Named Plaintiffs and the Hamilton Claimants shall not occur until after the time for any appeals has passed or if an appeal has been filed, that appeal has been resolved or dismissed.

112. Within forty-five (45) days of the issuance of any Court order directing payment to the Hamilton Claimants, Combined shall issue checks in accordance with the Order.

### B. Eligibility Requirements

113. Eligible Claimants shall include only those members of the Settlement Class who satisfy each of the following criteria:

> a. The Claimant is a woman who, at any time since April 30, 1999, worked in the Seventh Essential Sales Force of Combined and was a sales agent, supervisor or manager at some point during her career with Combined; and

> b. The Claimant completes and timely submits a sworn Claim Form in the form of Exhibit A to the Class Notice, appended hereto as Attachment 1, so that it is received no later than _____.

### C. Procedures To Determine Eligibility And Award Amounts

114. Following the formula set forth herein, Class Counsel shall determine the eligibility of and amount due (if any) to Eligible Claimants for relief under this Consent Decree. Class Counsel will make this determination by comparing the timely Claim Forms it receives with Combined's employment records. If there is any inconsistency between the two sources, Combined's employment records will be used to determine eligibility.

34

115.     All Eligible Claimants will receive a minimum award in the amount of $250 (the "Initial Payment").

116.     With the funds remaining after these Initial Payments (and after the payments described in Paragraph 108 above), Eligible Claimants who worked at Combined for more than 90 days will also be eligible for additional compensation (the "Additional Payment") based on their tenure of employment with Combined.  This amount would be based on an Eligible Claimant's tenure of employment at Combined, with the amount increasing the longer that person worked for Combined.

117.     The Additional Payment will be calculated by awarding "units" to Eligible Claimants based on their duration of employment with Combined.  Each unit would then be given a value based on the total number of units and the total amount of money left after all other payments are made.  The units would be awarded to Eligible Claimants as follows:

          a.     1 unit for Eligible Claimants who worked between 91 days and 270 days for Combined;

          b.     2 units for Eligible Claimants who worked between 271 and 450 days for Combined; and

          c.     3 units for Eligible Claimants who worked between 451 and 630 days for Combined.

118.     An additional unit will be awarded for each additional 180-day period that an Eligible Claimant worked for Combined.  To determine unit value, the total amount of the remaining fund would be divided by the total number of units attributable to Eligible Claimants. That amount would be the value of one unit.  By way of example, if there is $2 million remaining and the participating Eligible Claimants have a total of 800 units, unit value would be $2,500 ($2 million divided by 800 units).  An Eligible Claimant who had one unit, therefore,

would be entitled to an Additional Payment of $2,500, two units would be worth $5,000 and so forth.

119.   Class Counsel will calculate the amount to be paid to each Eligible Claimant in accordance with this Consent Decree.  In determining an Eligible Claimant's tenure of employment with Combined, Class Counsel will compare the duration of employment listed on the Claim Form with Combined's official employment records.  If there is any inconsistency between the two sources, Combined's official employment records will be used to determine duration of employment.  Class Counsel will submit these calculations to the Court.

120.   Within sixty (60) days of the issuance of any Court Order directing payment to Class Members, Combined shall issue checks in accordance with the Order. Combined shall include with the check a letter to each Claimant stating "It has been determined that you are an Eligible Claimant under the Radmanovich v. Combined and Palmer v. Combined Consent Decree and have been awarded a gross award of $____.  The enclosed check represents this amount minus applicable taxes."

121.   Combined shall promptly notify Class Counsel in writing of any checks that are returned or are not cashed after a period of one hundred eighty (180) days has elapsed from the date on which the settlement checks were mailed by Combined.  Class Counsel may take further steps to reach those Eligible Claimants who did not receive and/or deposit their settlement checks.

### XIII.   CONFIDENTIALITY OF AWARDS/STATEMENTS TO THE PRESS

122.   The Parties, Class Counsel, Plaintiffs, and Class Members shall not disclose to anyone the amount of any settlement check received under the terms of this Consent Decree, except (a) to the extent that these amounts are part of the public record or (b) that a

person receiving a check may reveal the allocated settlement amount that she received to her spouse, accountant, financial advisor, tax advisor or attorney, who shall be informed by the person receiving the check of this confidentiality requirement and be bound by it.

123. The Parties further agree they shall not disclose or cause to be disclosed any portion of the negotiations or any other non-public discussions related to this Consent Decree to the media or any other person or entity. This shall not prevent Class Counsel or counsel for Combined from addressing matters otherwise in the public record in professional contexts, such as in seminars or other legal training environments. The Parties and Class Counsel agree, however, that no statements shall be made to the press or media that are not pre-approved by Class Counsel and Combined.

## XIV. NOTICE TO THE CLASS, OBJECTIONS AND EXCLUSIONS

### A. Notice

124. Following Preliminary Approval by the Court on or about August 3, 2004, the following actions shall be taken to effectuate notice to the class:

125. Within ten (10) days after preliminary approval, Combined shall prepare and deliver to Class Counsel a computer disk containing the full names, social security numbers, last-known addresses and last-known telephone numbers of all Class Members together with each person's start date and (if applicable) end date of employment with Combined (the "Class List"). Within seven (7) days thereafter, Class Counsel shall mail, via first class United States Mail, postage prepaid, a Notice of the Class Settlement (Attachment 1 hereto), claim form, W-9 Form and opt-out statement to each person on the Class List.

126. Unless specified elsewhere in this Consent Decree, Class Counsel shall be responsible for administering the claims process. All expenses related to Class Counsel's

administration of the claims process portion of this Settlement including all mailing fees and other expenses shall be paid out of the Settlement Fund. All other expenses are to be borne by Combined.

### B.    Objections And Exclusions

127.    Class Members who wish to present objections to the proposed settlement must do so in writing. Written objections shall be mailed to Class Counsel and must be received by Class Counsel on or before _____. Class Counsel shall stamp the date received on the original of any objection they receive and serve copies of the objections on Combined's counsel not later than three (3) business days after receipt thereof, and Class Counsel shall file the date-stamped originals of any objections with the Clerk of Court no later than fifteen (15) business days prior to the date of the Final Approval hearing, which shall be scheduled (if possible) on or about November 1, 2004. Persons who file objections shall nonetheless be eligible to file Claims Forms and shall be bound by the same time periods as all other persons.

128.    Consistent with Paragraph 53 of this Consent Decree certifying the Settlement Class under Federal Rule of Civil Procedure 23(b)(3) for purposes of monetary relief, any member of the Settlement Class may request exclusion from the class for purposes of monetary relief only.

129.    Class Members who wish to exclude themselves from membership in the Settlement Class for purposes of participation in the monetary portion of the settlement must do so in writing by filing with Class Counsel a signed and dated "Opt-Out" statement (Exhibit B to Attachment 1 hereto), stating in substance that they wish to be excluded from the monetary settlement. Written opt-out statements shall be mailed to the Class Counsel and must be received

on or before _____. Only those persons who request exclusion in the time and manner set forth herein shall be excluded from the class.

130.    Pursuant to Federal Rule of Civil Procedure 23(b)(3) and (c)(2), the terms and provisions of this Consent Decree concerning monetary relief shall have no binding effect on any person who makes a valid and timely request for exclusion in the manner required by this Consent Decree.

131.    In the event that (a) any of the Plaintiffs refuses to execute a Release of Claims; or (b) more than three (3) of the Hamilton Claimants refuses to execute a Release of Claims; or (c) more than twenty-four (24) members of the Settlement Class elect to "opt-out" for purposes of participation in the monetary portion of this settlement, Combined may, solely at its option, void this Consent Decree. Combined shall notify Class Counsel of its decision to void this Consent Decree at least fifteen (15) days prior to the date set by the Court for the Final Approval hearing. In the event that Combined elects to void this Consent Decree, Combined shall also notify the Court of its decision; however, it shall have no further obligations under this Consent Decree and all monies (including, without limitation, any attorneys' fees) paid pursuant to this Consent Decree (other than monies for the costs and expenses of the Settlement) shall be immediately refunded or released to Combined.

### XV.    CONFIDENTIALITY OF DOCUMENTS PROVIDED TO CLASS COUNSEL UNDER THE TERMS OF THIS CONSENT DECREE

132.    All records, reports and other documents produced by Combined pursuant to formal discovery, informal discovery, the earlier mediation efforts and this Consent Decree shall be retrieved from Class Counsel by Combined within thirty (30) business days of the deadline for filing any appeals.

## XVI.    MISCELLANEOUS PROVISIONS

### A.    Calculation Of Time

133.    In computing any period of time prescribed or allowed by this Consent Decree, such computation or calculation shall be made consistent with Federal Rules of Civil Procedure unless otherwise stated.

### B.    Counterparts

134.    This Consent Decree may be executed in one or more counterparts and each executed copy shall be deemed an original, which shall be binding upon all parties hereto.

### C.    Persons Bound By Consent Decree

135.    The terms of this Consent Decree are and shall be binding upon the Plaintiffs and all members of the Settlement Class who do not opt-out of the settlement, their heirs, assigns, spouses and beneficiaries.  It is also binding upon Combined and its present and future representatives, agents, directors, officers, assigns and successors.

### D.    Construction

136.    The terms of this Consent Decree are the product of joint negotiations and shall not be construed as having been authored by one party rather than another.

### E.    Integration

137.    This Consent Decree constitutes the entire agreement between Combined and Class Counsel hereto with respect to the matters herein, and it supersedes all negotiations, representations, comments, contracts and writings prior to the date of this Consent Decree.

## XVII.    MODIFICATION AND SEVERABILITY OF THE CONSENT DECREE

138.    Whenever possible, each provision and term of this Consent Decree shall be interpreted in such a manner as to be valid and enforceable; provided, however, that in the

40

event any provision or term of this Consent Decree should be determined to be or rendered invalid or unenforceable (by an Act of Congress or otherwise), all other provisions and terms of this Consent Decree and the application thereof to all persons and circumstances subject thereto shall remain unaffected to the extent permitted by law. If any application of any provision or term of this Consent Decree to any person or circumstance should be determined to be invalid or unenforceable, the application of such provision or term to other persons and circumstances shall remain unaffected to the extent permitted by law.

139. Combined and Class Counsel may jointly agree to modify the Consent Decree with the approval of the Court.

140. Combined and Class Counsel shall make a good faith effort to defend this Consent Decree from any legal challenge whether by appeal, collateral attack or objection.

## XVIII. NOTICES

141. All notices and other communications required under this Consent Decree shall be in writing and delivered either personally, by commercial carrier or by depositing the same, postage prepaid, in the United States Mail, addressed to the party hereto to whom the same is directed at the following addresses:

To the Plaintiffs and Settlement Class:

Patricia C. Benassi, Esq.
Benassi & Benassi, P.C.
300 N.E. Perry Avenue
Peoria, Illinois 61603
(309) 674-3556

Thomas R. Meites, Esq.
Joan H. Burger, Esq.
Meites, Mulder, Burger & Mollica
208 S. LaSalle Street, Suite 1410
Chicago, Illinois 60604
(312) 263-0272

To Combined Insurance Company of America

> Margaret L. Parker, Esq.
> Piper Rudnick LLP
> 333 Market Street, Suite 3200
> San Francisco, California 94105
> (415) 777-3999
>
> Mark S. Mester, Esq.
> Latham & Watkins LLP
> 233 South Wacker Drive
> Suite 5800 Sears Tower
> Chicago, Illinois 60606
> (312) 876-7700
>
> Combined Insurance Company of America
> Attention: Law Department
> 1000 Milwaukee Avenue
> Glenview, Illinois 60025
> (847) 953-2025

142.    The Parties may from time to time change their address for the purpose of

this Section by providing written notice, return receipt requested, of such change to the other

Party.

Date:____1-12-05____    _____
                        Counsel for Plaintiffs

Date:____1/12/05____    _____
                        Counsel for Combined Insurance Company of
                        America